STATE of Maine

v.

**Fred VAHLSING.**

Supreme Judicial Court of Maine.

Argued Nov. 15, 1988.
Decided April 11, 1989.

James E. Tierney, Atty. Gen. and James T. Kilbreth, Chief Deputy Atty. Gen., Augusta, for the State.

Fred H. Vahlsing, Jr., Fort Fairfield, pro se.

Bernard G. O'Mara (orally), Easton, for defendant.

Before ROBERTS, GLASSMAN, CLIFFORD, HORNBY and COLLINS, JJ.

HORNBY, Justice.

This case requires us to canvass a variety of evidentiary and other issues that arose in the course of a twenty-day perjury trial.

Fred H. Vahlsing, Jr. is the president of Vahlsing, Inc. The Department of Environmental Protection (DEP) charged Vahlsing, Inc. with illegally storing hazardous wastes. At a hearing on the charge, the Board of Environmental Protection (BEP) permitted Vahlsing, Inc. to appear through

its president (Vahlsing) rather than legal counsel. As a result, Vahlsing argued legal and evidentiary matters to the Board, examined and cross-examined witnesses and generally performed the same functions as legal counsel. Indeed, he was called "counsel" by the Board chairman. In addition, Vahlsing took an oath and testified as a witness. Although the Board found against Vahlsing, Inc., its decision was subsequently vacated in Superior Court (Aroostook County; *Silsby, J.*).

As a result of statements he made at the hearing, Vahlsing was later indicted on perjury charges consisting of three specifications. Ultimately only the last specification went to the jury: that Vahlsing made the false statement under oath at the BEP hearing "that the building identified in the (DEP) Order as containing waste pesticides and other hazardous wastes had been sold by Vahlsing, Inc. to McCain Foods, Inc. in 1976." In a bill of particulars that accompanied the jury to the jury room along with the BEP hearing transcript, the State specified nine instances of the alleged perjury. Over Vahlsing's objection, the DEP's Order charging the corporation (and Vahlsing personally) with illegally storing the wastes also went to the jury. The jury found Vahlsing guilty of perjury. Vahlsing appeals the Superior Court (Penobscot County; *Smith, J.*) judgment on the jury verdict of guilty. We affirm.

### The Perjury Charge

■ The State charged Vahlsing with perjury for falsely swearing at the BEP hearing "that the building ... had been sold by Vahlsing, Inc. to McCain Foods, Inc. in 1976." In a bill of particulars obtained on Vahlsing's motion, the State listed nine occasions when Vahlsing referred to either the sale or McCain's subsequent ownership. Vahlsing argues that his conviction must be vacated because the specified instances cannot, as a matter of law,

constitute perjury. Essentially, this is an appeal of the denial of his motion for acquittal, and we must examine the record to determine "whether 'on the evidence as a whole, assessed most favorably to the State, a jury acting rationally could not avoid having a reasonable doubt as to the defendant's guilt.'" *State v. Gilbert,* 473 A.2d 1273, 1275 (Me.1984) quoting *State v. Howes,* 432 A.2d 419, 424 (Me.1981). *See also* M.R.Crim.P. 29(a).

Maine's perjury statute, 17-A M.R.S.A. § 451 (1983), provides:

1. A person is guilty of perjury if he makes:

A. In any official proceeding, a false material statement under oath or affirmation, ... and he does not believe the statement to be true.

On appeal there is no longer any issue concerning the materiality of any of the statements, the fact that they were made or that they occurred in an official proceeding. The trial justice correctly instructed the jury that it could convict Vahlsing of perjury only for statements he made under oath. In an oath one swears that the *testimony* one gives is the truth, the whole truth and nothing but the truth. Clearly, testimony does not include argument or examination and cross-examination of witnesses. It is immediately apparent from their contexts that in seven of the nine instances in the bill of particulars, Vahlsing was not testifying when he made the statements in question, but acting in the role of counsel to the corporation.[1] Two of the statements, however, were clearly testimony. In one, Vahlsing stated: "Well, I will testify under oath as I sit here that McCain purchased everything inside of that fence when he purchased the processing plant at Easton, Maine." (The building in question was allegedly inside the fence.) In another, he stated that he was about to testify and was under oath, then said: "Everything inside the fence pursuant to United

---

1. The Board's own lawyer responded to one of Vahlsing's assertedly perjurious statements by commenting that there was a "much more direct way" to get that information "[a]nd that would be to state what you [Vahlsing] just said on direct examination.... You can say that directly without having to try to elicit that on cross-examination for a long period of time—." This statement by the Board's lawyer was a direct recognition that Vahlsing was not then testifying.

States Bankruptcy Judge John R. Blint's Order was included in the sale to McCain signed by court order on September 1st, 1976. McCain has taken possession of this property." As testimony, either of these statements could support the perjury conviction.

■ All nine statements, testimonial and nontestimonial, went to the jury in the bill of particulars because Vahlsing introduced the bill of particulars into evidence. So far as any evidentiary error is asserted in admitting the seven nontestimonial statements, we look, therefore, only for obvious error, *see* M.R.Evid. 103(d), and we find none. Since each of the nine statements asserted either that Vahlsing, Inc. sold the building to McCain or that McCain subsequently owned the building (and there is no suggestion that anyone else sold the building to McCain), it is impossible to conceive how a jury could find that one of the statements was knowingly false without reaching the same conclusion for the two testimonial statements. Indeed, Vahlsing's closing argument to the jury did not even attempt to distinguish testimony from other kinds of statements.

With respect to Vahlsing's remaining arguments on the substance of the perjury charge, the transcript of the hearing reveals that Vahlsing recognized that he had taken an oath; the record does not reveal any retraction; the court's instructions adequately covered Vahlsing's statements regardless of whether they are considered fact or opinion, *see Shorette v. State*, 402 A.2d 450, 454 (Me.1979) (false statement of opinion or belief may constitute perjury); there was evidence to support beyond a reasonable doubt the jury's conclusion that the assertions were false and that Vahlsing did not believe them to be true; no instruction concerning conscious awareness of perjury penalties was required; and the other arguments do not require discussion.

### Admissability of Administrative Order

■ The State introduced into evidence the DEP Order that occasioned the administrative hearing. This was an official, four-page document bearing the emblem of the State of Maine Department of Environmental Protection. It was signed by the Commissioner of the Department. A segment captioned "Findings of Fact" stated explicitly that Vahlsing, Inc. was the owner of the building in question and included information in support of that conclusion. Vahlsing's initial objection that the Order was a nullity was properly overruled. He then objected to the relevance of certain portions of the Order if it was offered for its truth. The trial court indicated that the irrelevant portions could be kept from the jury's consideration through some device such as editing the document before the jury saw it. The State then asked its witness, the former Commissioner of the DEP, to read from the Order. Vahlsing immediately objected on grounds of hearsay, requesting a limiting instruction or a statement by counsel that the contents of the document were not being offered for their truth. Outside the jury's presence, the State conceded that the testimony was not being offered for the truth of the assertions in the document, but "solely for the purpose of establishing what the order says, which was what the hearing was on." This concession should have prompted a limiting instruction under M.R.Evid. 105.[2] Vahlsing was told, however, that his remedy was to pursue the matter on cross-examination. He received neither a limiting instruction to the jury from the court nor a statement from opposing counsel in the jury's presence concerning the limited purpose of the testimony. The witness was permitted to read from the Order that Vahlsing, Inc. was the owner of the building in question, and ultimately the document went to the jury.

Admission of this evidence without the requested limiting instruction was clearly error. As to the proposition that Vahlsing, Inc. (rather than McCain) owned the building, the document and the testimony were concededly inadmissable hearsay. M.R.

---

**2.** M.R.Evid. 105 provides:
When evidence which is admissible ... for one purpose but not admissible ... for another purpose is admitted, the court upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

Evid. 801(c). *See also* M.R.Evid. 803(8)(B)(iv). The witness admitted that he had no personal knowledge of the matters in the document. At the very least, Vahlsing was entitled under M.R.Evid. 105 to an instruction that the jury should not consider the document (or the reading of it by the witness) for the truth of the propositions it contained.

We conclude, nevertheless, that admission of the document and the testimony without the limiting instruction was harmless error because of the overwhelming evidence of Vahlsing, Inc.'s ownership of the building in question. The lawyer that represented McCain at the time of its purchase of assets from Vahlsing, Inc. in 1976 testified that the transaction reflected in the purchase documents did not include this building. The Easton Town Manager testified that he visited the building in 1983 with McCain personnel and that McCain personnel denied that McCain owned the building. He testified that in 1983 he also visited the building with Vahlsing and that during the visit Vahlsing never denied his company's ownership of the building; said that he could get rid of the chemical materials in it; offered to give the building to the Town; and referred to salvaging the rafters in the building. The Town Manager testified that in ongoing contacts with Vahlsing he never denied his company's ownership of the building. The evidence showed that generally, Vahlsing took pains to avoid inappropriate taxation, yet never did he challenge the Town's ongoing taxation of this building. Instead, he paid back taxes on behalf of Vahlsing, Inc. to remove a tax lien on this and other locations. When Vahlsing was asked on the stand why he did not deny Vahlsing, Inc.'s ownership of the building to the Town Manager he had no adequate explanation except to say that "generally I don't, as I conduct myself, attempt to inform someone else about someone—for instance, Mr. Beaton, about someone else's property. I just don't do that." Moreover, evidence was introduced that subsequent to the alleged sale to McCain, Vahlsing, Inc. paid rent to the Bangor and Aroostook Railroad for the un-

derlying land on which the building was situated. Specifically, in a sale of railroad ties and other materials to the Bangor and Aroostook Railroad from Vahlsing, Inc., Vahlsing permitted an amount to be deducted for back rent.

As contrary evidence Vahlsing argued that the transaction with McCain had involved the entire potato processing complex and that this building was a potato hut, part of that complex, and therefore included within the sale. His explanation of items like the tax payments and lease payments appears primarily to have been that his attention was not directed to this particular building, a very small item in the overall scope of his business affairs. In addition, he presented the testimony of a farmer, corroborated by another witness, that he had been able to obtain, from McCain personnel and with the assistance of McCain personnel, chemicals stored in the building. There was testimony, however, that the person who authorized the acquisition of these chemicals, although the head of the potato procurement office at McCain, had also been general manager of the Vahlsing, Inc. operation and the farmer testified that he did not know what entity this individual was representing in giving him the chemicals.

■ In other words, the evidence of Vahlsing, Inc.'s ownership of the building is overwhelming. It is true that we have stated that written evidence is more significant to a jury than oral testimony and therefore less likely to be considered harmless error. *See Morgan v. Paine,* 312 A.2d 178, 185–86 (Me.1973). In light of the particular strength of the evidence that Vahlsing, Inc. had not sold the building to McCain in 1976, however, we are confident that this case meets the test of harmless error, namely, that it is "highly probable that the error [in admitting the document] did not affect the judgment." *State v. Huff,* 469 A.2d 1251, 1253–54 (Me.1984).[3]

*Miscellaneous Matters*

■ The trial court refused to permit Vahlsing to call a new witness after resting

---

**3.** The document also contains references to hazardous substances on the premises, references

that could be considered prejudicial. When the Order was first admitted, the presiding justice

his case because no new issue had been raised by the State's rebuttal testimony, the probative value of the proposed evidence was minimal and there was "so little apparent reason" for the late offer. We find no abuse of discretion. *See* M.R.Crim. P. 26(c).

There was no error in the denial of the mistrial motions and in the court's refusal to give a limiting instruction with respect to evidence admitted on the first two perjury specifications. (The court granted the defendant's motion for acquittal on these specifications before submitting the case to the jury.) Much of the evidence from this very lengthy trial related to more than one specification, and the defendant was able to argue weight of the evidence to the jury. Moreover, the court was not required to inform the jury that it had granted the defendant's motion for acquittal on the first two specifications; it was sufficient to inform the jury simply that those matters were no longer before it for its consideration.

The tape recording of Harrison McCain was properly excluded. McCain was not a party under M.R.Evid. 801(d)(2) and the statement in question was not clearly against interest under M.R.Evid. 804(b)(3). The Dixon testimony concerning what he heard the parties to the sale transaction say about property "within the fence" was properly excluded under Rule 403.

The entry is: Judgment affirmed.

All concurring.

made clear that such objectionable material could be kept from the jury's consideration in some fashion, such as by blocking it out. He informed the parties that they could take care of that matter before the document went to the jury. The State did not ask the DEP Commissioner to read those portions of the Order. In Vahlsing's cross-examination of the DEP Commissioner, however, he specifically went into the hazardous waste portion and he has not pointed us to anywhere in the transcript where he later attempted to pursue the trial court's offer of editing the document. Thus, to the extent that Vahlsing is raising this issue on appeal, we conclude that the claim of prejudice was not properly preserved and review only for obvious error. *See* M.R.Evid. 103(d). Although the references may have been excludable under M.R.Evid. 403, our examination reveals that Vahlsing has not demonstrated that the proceeding was thereby tainted or that he was denied a fair trial resulting in manifest injustice. *State v. Whiting,* 538 A.2d 300, 302 (Me.1988).