NORTHEAST COATING
TECHNOLOGIES,
INC.

v.

VACUUM METALLURGICAL
CO., LTD., et al.

Supreme Judicial Court of Maine.

Argued Oct. 7, 1996.

Decided Nov. 4, 1996.

Paul W. Cadigan (orally), Reagan, Adams & Cadigan, Kennebunk, for Plaintiff.

Melissa A. Hewey (orally), Christopher G. Jernigan, Drummond, Woodsum, & MacMahon, Portland, for Defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

WATHEN, Chief Justice.

Plaintiff, Northeast Coating Technologies, Inc. (NCT), appeals from the summary judgment entered against it in the Superior Court (York County, *McKinley, A.R.J.*) on all three counts of its complaint against defendants, Vacuum Metallurgical Co., Ltd. (VMC), UL-VAC Corporation, IHT Corporation, ULVAC North America Corporation, ULVAC Technologies, Inc., and Darrell Lewis.[1] NCT argues on appeal that it made a sufficient showing before the trial court of misappropriation of trade secrets, conversion, and intentional interference with advantageous relationships to survive defendants' motion for a summary judgment. We find no error and affirm the judgment.

The facts, as developed for purposes of the motion for a summary judgment, may be summarized as follows: NCT is a corporation formed by Shawn Spencer and others to create a metal vacuum coating business in Kennebunk. Spencer is a former employee of IHT Corporation, a division of which is currently engaged in metal vacuum coating in Kennebunk. NCT's incorporators prepared a stock prospectus to be distributed among potential investors. According to the verified complaint, it took approximately one year and $100,000 to develop this prospectus. It contains pricing information, five-year capital and operating budget projections, market development plans, and research and development planning information. The prospectus was approved by the relevant governmental agencies for circulation in connection with a proposed stock offering.

Of particular importance to the present controversy is the fact that the prospectus includes the terms of an option contract between NCT and an Arkansas company, National Swage, for the purchase of a used coating machine. This contract gave NCT the right to purchase the machine for $75,000. A comparable new machine sells for $800,000 to $1,200,000. Spencer learned of the machine's existence from an employee of ULVAC.

NCT circulated its prospectus to thirty to fifty potential investors. Approximately twenty-five of these individuals had not previously been contacted by anyone from NCT. The prospectus contains the following notice:

> This information is being provided to you on a confidential basis for the purpose of soliciting your purchase of stock in the corporation and for no other purpose. You agree, by accepting this material for review, that you will not reproduce or distribute any part of its contents without the prior written consent of the corporation.

Spencer testified in his deposition that Darrell Lewis, manager of IHT's Kennebunk division, phoned him shortly after the copies of the prospectus were sent out. Lewis informed Spencer that he had learned of NCT's business plan. According to Spencer, Lewis said that he would contact other metal coating businesses and urge them to persuade National Swage to breach its contract. He also allegedly told Spencer that he would distribute the contents of the prospectus throughout the industry and "do anything else necessary to prevent plaintiff from entering the vacuum coating business." One of NCT's potential investors was an acquaintance of Lewis who had provided him with a copy of the prospectus.

Shortly thereafter, Spencer learned that several individuals in the vacuum coating industry had been provided with information contained in NCT's prospectus. He was also told by an officer of a Texas company that, because of the information being distributed by Lewis, many in the vacuum coating industry were "frightened" of competition by NCT. Spencer also discovered that National Swage had received several calls from companies seeking to purchase the coating ma-

---

1. According to NCT, all of the corporate defendants are related through complex stock holdings and interlocking directorates. This alleged interrelationship and uncertainty as to who exactly supervises Lewis, the actor in this case, were apparently the reasons that NCT named all of the corporate defendants in its complaint. Given our resolution of the issues in this case, we need not decide whether all of these defendants were proper parties to this action.

chine at prices much higher than the contract price.

NCT contacted defendant VMC and demanded that it order Lewis to cease his activities, return all copies of the prospectus to NCT, and furnish the names of all persons to whom Lewis had divulged the contents of the prospectus. The individual contacted at VMC stated that he would investigate the matter.

NCT commenced the present action in the Superior Court alleging interference with beneficial business relationships, conversion, and misappropriation of trade secrets. According to NCT, because of Lewis's actions and the present litigation, it has become necessary for NCT to withdraw its prospectus and it has become impossible for NCT to raise the capital needed to acquire the coating machine and commence the business according to its original start-up plan. Although unable to pursue its original plan, NCT was able to exercise its option to purchase the coating machine in November, 1994 by entering into a contract with a Canadian company, Exactatherm. NCT agreed to improve and deliver the coating machine to Exactatherm and to train its employees to use it in exchange for $305,000. On June 23, 1995, a summary judgment was entered in the Superior Court for defendants on all three counts of plaintiff's complaint.

We review the entry of a summary judgment for errors of law, viewing the evidence in the light most favorable to the party against whom the judgment was entered. *Maynard v. Commissioner of Corrections,* 681 A.2d 19, 23 (Me.1996). For a party to be entitled to a summary judgment, it must be determined that there are no issues of material fact in dispute and that the prevailing party is entitled to a judgment as a matter of law. *Id.* In response to a defendant's motion for a summary judgment on any claim, a plaintiff having the burden of proof at the trial must produce evidence that, if produced at trial, would be sufficient to resist a motion for a judgment as a matter of law. *Town of Lisbon v. Thayer Corp.,* 675 A.2d 514, 517

(Me.1996). To do this, the plaintiff must establish a *prima facie* case for each element of the cause of action. *Id.*

■ NCT argues that Lewis's use and dissemination of the information contained in its prospectus constitutes "misappropriation" of a "trade secret" under the Uniform Trade Secrets Act (UTSA), 10 M.R.S.A. §§ 1541–1548 (Supp.1995). We need not engage in an extensive analysis of the Act, because in order for information to qualify as a trade secret, it must be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." 10 M.R.S.A. § 1542(4)(B). There was nothing presented to the trial court to support a conclusion that NCT took such reasonable efforts to protect the information in its prospectus. Notwithstanding the notice set forth in the prospectus, NCT's unsolicited distribution of the information to various individuals who had no legal duty to maintain its secrecy precludes it from qualifying as a trade secret. Thus, summary judgment on NCT's Trade Secrets Act claim was proper.

■ NCT further argues that it has generated a genuine issue of material fact as to whether Lewis converted its interest in the information contained in the copy of the prospectus. NCT's interest in that information is not protected by a conversion action. Conversion may extend to certain types of intangibles, for example a right to payment, or a right to withdraw funds, that are "customarily merged in or identified with some document," *Restatement (Second) of Torts,* § 242, such as a promissory note or bank book. The unfair use and appropriation of information that is not customarily merged in a particular document is more appropriately addressed by other remedies, including those created for unfair competition or misappropriation of trade secrets. Accordingly, summary judgment on NCT's conversion claim was properly granted.

■ Finally, NCT alleges that, until the action of Lewis, it had a reasonable expectation that National Swage would grant it an

extension of the option if it needed more time to raise capital and that its relationship with National Swage was flexible. NCT contends that defendants tortiously interfered with this relationship by informing National Swage, through "surrogates," of the coating machine's potential value. NCT also argues that defendants tortiously interfered with its relationship with potential investors by forcing it to withdraw its prospectus.

 To establish the tort of interference with an advantageous relationship, a plaintiff must show a valid contract or prospective economic advantage, interference with that contract or advantage through fraud or intimidation, and damages proximately caused by the interference. *Barnes v. Zappia,* 658 A.2d 1086, 1090 (Me.1995). There is no evidence in this case that any contract or prospective economic advantage was interfered with through fraud, intimidation, or misconduct. Therefore, summary judgment for defendants on NCT's claim for intentional interference with an advantageous relationship was properly granted.

The entry is:

Judgment affirmed.

All concurring.