1997 ME 79

**STATE of Maine**

v.

**Linda B. ALLISON**

Supreme Judicial Court of Maine.

Argued March 4, 1997.
Decided April 16, 1997.

---

Neale T. Adams, District Attorney, John M. Pluto, Dep. Dist. Atty. (orally), Caribou, for State.

Phillip E. Johnson (orally), Johnson, Webbert & Laubenstein, LLP, Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

[¶ 1] Linda B. Allison appeals from the judgments entered in the Superior Court (Aroostook County, *Pierson, J.*) following jury verdicts of guilty of official oppression (Class E) in violation of 17–A M.R.S.A. § 608 (1983)[1] and accomplice liability for criminal sales or use tax fraud (Class E) in violation of 36 M.R.S.A. § 2113 (1990).[2] On appeal, Allison contends that the court improperly denied her motion for acquittal and erred in

---

**1.** Section 608 provides in part:

**§ 608. Official oppression**

**1.** A person is guilty of official oppression if, being a public servant and acting with the intention to benefit himself or another or to harm another, he knowingly commits an unauthorized act which purports to be an act of his office, or knowingly refrains from performing a duty imposed on him by law or clearly inherent in the nature of his office.

**2.** Official oppression is a Class E crime.

**2.** Section 2113 states in part:

**§ 2113. —criminal**

Any violation of any provision of chapters 211 to 225 [sales and use tax laws] for which a penalty or forfeiture is not provided by any other Title of the Revised Statutes shall be a Class E crime.

The Legislature subsequently amended this section. *See* P.L.1995, ch 639 § 9 (effective April 10, 1996); P.L.1995, ch. 640 § 7 (effective July 4, 1996).

instructing the jury. Finding no error, we affirm the judgments.

[¶ 2] The testimony at the trial may be summarized as follows: Allison was a clerk for the Town of Eagle Lake. Additionally, she was a municipal agent within the meaning of 29–A M.R.S.A. § 201 (1996),[3] appointed by the Secretary of State to assist in registering vehicles and collecting sales and use taxes[4] at the town office. Allen Chamberland, vice president of Fort Kent Credit Union, testified that he processed a loan application for $12,726 during the summer of 1995 to finance Linda and Alan Allison's purchase of a Ford Ranger from Carlton Dionne. Both Chamberland and Dionne testified that Linda, and not her husband, Alan, did the majority of the work preparing for the loan and purchase of the Ford Ranger. Dionne testified that the price of the truck was about $13,500, and that he received a check for approximately $1,200 from Linda and $800 cash, with the balance of the loan being paid to a bank for its prior loan on the truck. Dionne testified that there were two bills of sale. The first bill of sale, prepared at the time of the original sale, reflected a purchase price of $13,500. The second bill of sale, however, recited that the vehicle was being purchased for $5,000 and a restored 1980 Toyota. Dionne testified that he signed the second bill of sale after the actual date of sale at Linda's request because Linda said that she and Alan did not have enough money to register the vehicle. Although both Alan and Linda's signatures were on the first bill of sale, Linda's signature was omitted from the second bill of sale.

[¶ 3] James Nadeau, the town manager of Eagle Lake, testified that Allison became a municipal agent by completing the necessary workshops and being appointed by the board of selectmen. Nadeau, who also is a municipal agent, testified that when someone registers a new or used vehicle for the first time, the agent asks to see a bill of sale. The person registering the vehicle then fills out a title application, and using the bill of sale, the person completes a use or sales tax certificate.[5] Nadeau concluded by examining the ledger sheet kept in the office that Linda had collected $300 on August 11, 1995, which represents the use tax on $5,000 and not $13,500, the actual purchase price of the truck.

[¶ 4] Allison testified that she entered into discussions with Dionne because her husband wanted to buy the truck. Allison also admitted that she participated in procuring the loan and signed some of the documents. She testified that she treated her husband no differently than other people when he came into the office to register the vehicle. She stated that she noticed that the use tax certificate stated a different sales price than that existing on the first bill of sale but that she did not give it any thought and stated that it was not her concern.[6] She denied having any involvement with the creation of a second, fraudulent bill of sale. Allison said that she did not know that she was doing an unauthorized act when she registered the vehicle and that she had no

3. 29–A M.R.S.A. § 201(1) provides:
   § 201. Municipal official as agents
   1. Appointment of agents by Secretary of State; scope of authority. With the approval of the municipal officers, the Secretary of State may appoint a municipal tax collector, or other persons designated by a municipality, to collect excise taxes on vehicles and to receive applications for licenses, license renewals, registrations and renewals of registrations of motor vehicles, trailers and semitrailers. The Secretary of State may authorize a municipal agent to issue licenses, registrations and renewals of licenses and registrations or may limit the agent's authority to the issuance of renewals only.

4. 36 M.R.S.A. § 1952–A (Supp.1996) provides that the sales or use tax on vehicles must be paid

at the time and place of registration of the vehicle.

5. Nadeau testified that he attended a two-day workshop offered by the State in order to become a municipal agent. He testified that to his knowledge, the duties of a municipal agent did not include any investigative duties. He also testified that it is recommended that the customer fill out the use tax certificate form.

6. Allison testified that if paperwork was overly suspicious, she had been instructed to put a red dot on the registration so that the Secretary of State's office could investigate the matter further. Allison, however, did not put a red dot on her husband's registration.

knowledge of the true purchase price of the truck. Following the State's case, Allison made a motion for a judgment of acquittal that the court denied. This appeal followed her conviction on both counts.

## I.

 [¶ 5] Allison contends that the court erred by not granting her motion for a judgment of acquittal because she did not perform an unauthorized act pursuant to section 608. She argues that no evidence suggested that she could have rejected the application. Moreover, Allison contends that her actions were justified pursuant to 17–A M.R.S.A. § 102 (1983). We review the denial of a motion for acquittal by deciding "whether, viewing the evidence as a whole from the standpoint most favorable to the State, the jury rationally could not avoid having a reasonable doubt as to the defendant's guilt." *State v. Spooner*, 666 A.2d 863, 864 (Me. 1995); *State v. Vahlsing*, 557 A.2d 946, 947 (Me.1989).

[¶ 6] We are unpersuaded by Allison's contentions. Allison was an agent of the Secretary of State for the purposes of processing applications for registration and collecting the tax due as a municipal agent. Although municipal agents have no investigative duties, a municipal agent's processing of an application with actual knowledge that the application is fraudulent is an inherently unauthorized act. Viewing the evidence in the light most favorable to the State, the jury could have inferred from the testimony that Allison had actual knowledge that the use tax certificate had been fraudulently completed. Because the duties inherent in the nature of the office do not include the processing of a motor vehicle registration with knowledge that the use tax had been fraudulently computed, the court correctly denied Allison's motion for a judgment of acquittal.[7]

## II.

[¶ 7] Allison argues that she could not be held liable as an accomplice to sales or use tax fraud because the purchaser was required to pay the tax, and she was required to accept the use tax certificate. We disagree. Pursuant to 17–A M.R.S.A. § 57(3)(A) (1983), a person is held criminally liable as an accomplice if "[w]ith the intent of promoting or facilitating the commission of the crime, [s]he solicits such other person to commit the crime, or aids or agrees to aid or attempts to aid such other person in planning or committing the crime." Allison was not required by any affirmative regulation or statute to register vehicles when she had actual knowledge that the information given to her was fraudulent. Thus, Allison's claim is without merit. Allison's additional arguments regarding accomplice liability and alleged error in the jury instructions lack merit and do not require further discussion.

The entry is:

Judgments affirmed.

---

7. Because the act was unauthorized, the court properly refused to apply the defense of justification. *See* 17–A M.R.S.A. § 102 (1983) (conduct is justifiable when authorized by law).