STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-06-71

VIRGINIA E. SNOW

STATE OF MAINE
Cumberland, ss, Clerk's Office
SUPERIOR COURT

MAY 23 2007

RECEIVED

Plaintiff

v.

PORTLAND HOUSING
AUTHORITY, et al.

Defendants

ORDER ON
DEFENDANTS' MOTION
FOR SUMMARY
JUDGMENT

DONALD L. GARBRECHT
LAW LIBRARY

AUG 2 0 2007

Before the Court is Defendants Portland Housing Authority ("PHA"),

Bruce R. Loring ("Loring"), Linda Herbert ("Herbert") and Janice Bosse's

("Bosse") motion for summary judgment on Plaintiff Virginia Snow's

("Plaintiff") amended complaint.

## BACKGROUND

Plaintiff owns a condominium that she rents. PHA is a governmental

entity with the mission of helping provide affordable housing to those in need.

Owners of participating properties contract with PHA for assistance arranging

the rental of their property to "Section 8" tenants who receive housing assistance

payments from PHA. Plaintiff agreed to rent her condominium to James Lowry

("Lowry") who received such assistance from PHA. The lease was signed on

February 1, 2002. Unknown to Plaintiff, Lowry had been convicted of multiple

crimes prior to that date.

Herbert is a PHA Housing Officer responsible for determining eligibility

of prospective tenants to receive rental assistance from PHA. Herbert also has

continuing responsibility over the eligibility of program participants once rental

assistance is provided. Plaintiff alleges that Herbert made representations to her

1

that Lowry had not been convicted of any crimes even though Plaintiff expressly stated that she would not rent to an individual with a criminal background. Plaintiff also alleges that after she began to have problems with Lowry as a tenant, she asked Herbert on multiple occasions to verify that Lowry's record was clean and that Herbert confirmed that it was. Herbert denies that she ever represented to Plaintiff that Lowry had a clean criminal record.

Following an eviction proceeding against Lowry, Plaintiff gained access to her rental unit on September 27, 2005, at which time Plaintiff became aware of significant damage done by Lowry. Shortly thereafter, Plaintiff initiated a criminal background check on Lowry. On October 7, 2005 Plaintiff received records reflecting Lowry's criminal background.

Plaintiff initiated the present suit against PHA and Loring on December 22, 2005. In her two count complaint, Plaintiff alleged fraudulent misrepresentation and negligent misrepresentation. Both counts of the original complaint were pursued against Loring in his individual and representative capacities as well as against PHA as a governmental entity.

On May 10, 2006, PHA and Loring filed a motion for summary judgment. In her opposition to summary judgment, filed on May 30, 2006, Plaintiff expressly abandoned her negligent misrepresentation cause of action, leaving only her claim of fraudulent misrepresentation on the part of PHA and Loring. Along with her memorandum in opposition to summary judgment, Plaintiff filed a motion to amend her complaint in order to add one count alleging violation of Maine's Uniform Deceptive Trade Practices Act ("UDTPA"), 10 M.R.S.A. §§ 1211 – 1216, against PHA as a governmental entity as well as against Loring, Herbert and Housing Services Director Bosse in their individual and representative

capacities. Plaintiff also moved to amend her complaint to add Herbert and Bosse as defendants under the existing fraudulent misrepresentation count. On June 19, 2006, the Court granted Plaintiff's motion to amend and on June 23, 2006 Plaintiff filed her amended complaint. In an order dated November 8, 2006 the Court granted summary judgment in favor of PHA and Loring on all counts alleged in Plaintiff's original complaint.

On January 10, 2007, Defendants filed a motion for summary judgment on all counts of Plaintiff's amended complaint. In her memorandum in opposition to summary judgment, Plaintiff does not argue in opposition to Defendants' contention that summary judgment is appropriate with respect to her UDTPA claim. She also does not oppose summary judgment in Bosse's favor on the fraudulent misrepresentation count. In addition, in the prior summary judgment order, this Court entered judgment in favor of Loring and PHA on Plaintiff's fraudulent misrepresentation count. As a result, the only issue remaining for decision on the present motion is whether summary judgment is appropriate in favor of Herbert on Plaintiff's fraudulent misrepresentation cause of action.

## STANDARD OF REVIEW

Summary judgment is proper where there are no genuine issues of material fact. *Rogers v. Jackson*, 2002 ME 140, ¶ 5, 804 A.2d 379, 380. Prompt disposition of cases through summary judgment is appropriate when "the dispute is solely dependent on an issue of law. *Cook v. Lisbon Sch. Comm.*, 682 A.2d 672, 675 (Me. 1996) (quoting *Tisei v. Town of Ogunquit*, 491 A.2d 564, 569 (Me. 1985) (internal quotations omitted)).

In response to a defendant's motion for a summary judgment, a plaintiff having the burden of proof must produce evidence that, if produced at trial,

3

would be sufficient to resist a motion for judgment as a matter of law. *Ne. Coating Technologies, Inc. v. Vacuum Metallurgical Co.*, 684 A.2d 1322, 1324 (Me. 1996). This requires the plaintiff to establish a prima facie case for each element of the cause of action. *Id.* "A party opposing a motion for a summary judgment must come forward with competent and admissible evidence in response to the motion." *First Citizens Bank v. M.R. Doody, Inc.*, 669 A.2d 743, 744 (Me. 1995).

## DISCUSSION

### I. Timeliness of Notice and Claim

Under the Maine Tort Claims Act ("MTCA"), 14 M.R.S.A. §§ 8101 – 8118, a plaintiff suing a governmental entity is required to give that entity notice of the suit within 180 days of accrual of her cause of action. 14 M.R.S.A. § 8107(1). In addition, the statute of limitations is two years from accrual. 14 M.R.S.A. § 8110.

As an initial matter, Plaintiff's fraudulent misrepresentation cause of action is based on her allegation that Herbert's misrepresentations induced her to rent to Lowry. Therefore, any alleged misrepresentations by Herbert regarding Lowry's criminal background occurring after Plaintiff agreed to rent to Lowry are immaterial as Plaintiff could not have relied on these misrepresentations in coming to that agreement. As a result, the only question affecting whether Plaintiff's notice was timely as well as whether her case was brought within the statute of limitations is whether Plaintiff's cause of action "accrued" when Herbert allegedly told Plaintiff in 2002 that Lowry had no criminal history, or when Plaintiff discovered in 2005 that Lowry had a criminal history. If it accrued in 2002, Plaintiff's notice of claim and complaint were both untimely.

One instructive case on the issue at bar is *Cottle Enterprises, Inc. v. Town of Farmington*. 1997 ME 78, 693 A.2d 330. In *Cottle Enterprises, Inc.*, the Law Court, in

4

holding that a Plaintiff was time barred from asserting a tortious misrepresentation claim, stated that 14 M.R.S.A. § 8107(1) "requires the filing of a notice of claim within 180 days of the wrongful act alleged to produce a judicially cognizable injury." *Id.* ¶ 15, 693 A.2d at 334. This view of when an action for tortious misrepresentation accrues is in line with the general rule for accrual of causes of action in Maine. *See e.g. Dunelaw Owners' Assoc. v. Gendreu*, 2000 ME 94, ¶ 11, 750 A.2d 591, 595 (stating general rule and going on to note that "[a] tort action accrues when the plaintiff suffers harm to a protected interest"). Thus, under the general rule, Plaintiff's cause of action would be time barred.

Although *Cottle Enterprises, Inc.* seems at first to be dispositive of the present issue, the court in that case left the door open to the possibility that, in a fraudulent misrepresentation case, a cause of action might not accrue until a plaintiff "understood that [the defendant's] representations had been, at the very least, inaccurate." *See Cottle Enterprises, Inc.*, 1997 ME 79, n. 5, 693 A.2d at 335.

In further support of the timeliness of Plaintiff's cause of action is a First Circuit case interpreting Massachusetts law in which the court recognized that "[a] claim for fraudulent misrepresentation does not begin to accrue until 'a plaintiff learns or reasonably should have learned of the misrepresentation.'" *Rodi v. S. New England School of Law*, 389 F.3d 5, 17 (1st Cir. 2004) (quoting *Kent v. Dupress*, 429 N.E.2d 1041, 1043 (Mass. App. Ct. 1982). While this case applied the law from a different jurisdiction, it is nevertheless persuasive. Together with the Law Court's recognition in *Cottle Enterprises, Inc.* that the relevant date for accrual of a fraudulent misrepresentation claim could involve an analysis of when a plaintiff should have discovered the misrepresentation, and in the absence of any authority to the contrary, there is no reason to hold that the rule

5

in Maine is different from that in Massachusetts.[1] As a result, Plaintiff's cause of action accrued at the time she learned of Lowry's criminal record, rendering both her notice of claim and complaint timely.

## II. Bad Faith

Under the MTCA Plaintiff can only hold Herbert liable for an intentional tort if she demonstrates that Herbert's actions were in "bad faith" as the MTCA provides a government employee with immunity from suit for "[a]ny intentional act or omission within the course and scope of employment; provided that such immunity does not exist in any case in which an employee's actions are found to have been in bad faith." 14 M.R.S.A. § 8111(1)(E).

Although it is a close call, Plaintiff has presented sufficient evidence of bad faith. Herbert was not personally responsible for carrying out the background check on Lowry, but this does not nullify her subsequent actions as alleged by Plaintiff. Specifically, Plaintiff states that Herbert repeatedly assured her that a background check had been conducted and had come back showing that Lowry had no criminal background at times when Herbert had no knowledge of the results of any background check. Herbert testified at her deposition that the intake department would normally conduct such background checks to determine whether a party had been convicted of crimes sufficient to render him ineligible to receive PHA assistance. Even if Herbert could reasonably have relied on the fact that the intake department had approved Lowry for the proposition that a background check had been conducted,

---

[1] This result is further reinforced by 14 M.R.S.A. § 859, which permits a plaintiff to file suit within 6 years after discovery of the existence of a cause of action when a defendant fraudulently conceals that cause of action from a plaintiff.

however, that would not warrant Herbert telling Plaintiff that Lowry had no criminal history. Although certain crimes may render a party ineligible for PHA assistance, it is possible for a party who has a criminal history to nonetheless qualify for PHA assistance. Plaintiff's allegation that she told Herbert that she did not want to rent to anyone with a criminal history, together with Herbert's alleged actions in initially misrepresenting and then continuing to misrepresent her knowledge of Herbert's lack of a criminal background could lead a reasonable jury to conclude that Herbert acted in bad faith.

## III. Discretionary Function Immunity

Even if Herbert might otherwise be liable under the bad faith exception to 14 M.R.S.A. § 8111(1)(E), she could be immune from suit under a provision of the MTCA that recognizes absolute immunity for governmental employees "[p]erforming or failing to perform any discretionary function duty, whether or not the discretion is abused." 14 M.R.S.A. § 8111(1)(C).

> The absolute immunity provided by paragraph C shall be applicable whenever a discretionary act is reasonably encompassed by the duties of the governmental employee in question, regardless of whether the exercise of discretion is specifically authorized by statute . . . and shall be available to all governmental employees . . . who are required to exercise judgment or discretion in performing their official duties.

14 M.R.S.A. § 8111(1). Discretionary function immunity can apply where a complained of act was intentional so long as the act did not exceed the scope of the discretion a defendant possessed in her official capacity. *Polley v. Atwell*, 581 A.2d 410, 413 (Me. 1990). In deciding whether an act is "discretionary," the following factors must be considered:

> (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program[,] or objective?

(2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective[,] as opposed to one which would not change the course or direction of the policy, program[,] or objective?

(3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved?

(4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Grossman v. Richards*, 1999 ME 9, ¶ 7, 722 A.2d 371, 374 (quoting *Berard v. McKinnis*, 1997 ME 186, ¶ 9, 699 A.2d 1148, 1151).

One instructive case on the issue at hand involved a foster child who made unsubstantiated sexual abuse allegations against her former foster parents. *Polley*, 581 A.2d at 411. In placing the child with new foster parents, a caseworker declined to mention the previous incident because of the uncertainty involved. *Id.* The foster parents eventually learned of these allegations and subsequently were accused of sexual abuse by the foster child. *Id.* at 411-12. The foster parents sued the caseworker for breach of contract, negligence and fraud. *Id.* at 412.

In determining that the caseworker was immune from suit under 14 M.R.S.A. § 8111(1)(C), the court found persuasive that there was a strong statutorily expressed policy that caseworkers should have wide discretion in determining what information to keep confidential in pursuing the goal of placing foster children in suitable foster homes. *Id.* at 413.

Taking the evidence in a light most favorable to Plaintiff, it is evident that Herbert cannot invoke discretionary immunity. Plaintiff asserts that Herbert stated that a background check had been conducted and come up clean at a time when she had no actual knowledge of Lowry's criminal background. This

representation was made even though Herbert knew or should have known that the mere fact that the intake department had approved Lowry did not mean that he had no criminal background. Misrepresenting a potential tenant's criminal background to a landlord who asks about that background cannot be said to have been within Herbert's discretion as a housing officer.[2]

## IV. Waiver of Liability in Housing Assistance Payments Contract

In order to participate in PHA's housing assistance payment program, Plaintiff signed a standard Housing Assistance Payments Contract ("HAP Contract") on April 5, 2002. Under the terms of this contract, an owner agrees that she is responsible for screening a tenant's behavior for suitability for tenancy, that PHA is not responsible for that screening, and that PHA has no liability or responsibility to the owner for a tenant's behavior or conduct during his tenancy. Thus, under the plain language of the contract, it would appear that Plaintiff has waived her right to bring the present lawsuit.

Plaintiff raises two issues that she contends demonstrate that the waiver provision of the HAP contract does not bar her suit. First, she argues that there was fraud in the inducement. Fraud in the inducement is a defense to a contract that renders it voidable. *Cote v. Dep't of Human Services*, 2003 ME 146, n. 1, 837 A.2d 140, 142. This doctrine, however, is only applicable where "a party's manifestation of assent *is induced* by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in

---

[2] This is unlike in *Polley* where the caseworker, in not revealing the child's allegations against her former foster parents to the new foster parents, made a discretionary decision based on the uncertainty surrounding the truth of those allegations. In the present case, Herbert had access to information necessary to determine whether or not a criminal background check had in fact been conducted and the results from such a background check.

relying." RESTATEMENT (SECOND) OF CONTRACTS § 164(1) (1981) (emphasis added).

The undisputed timeline of events in this case negates Plaintiff's claim of fraud in the inducement. Specifically, the lease agreement between Plaintiff and Lowry is dated February 1, 2002. It was not until March 7, 2002 that Plaintiff filled out a Request for Tenancy Approval in the housing choice voucher program. Plaintiff did not meet Herbert until she went to sign this initial program paperwork. Finally, Plaintiff did not sign the HAP Contract until April 5, 2002. Quite simply, it is impossible for any alleged fraud on the part of Herbert to have induced her to rent to Lowry when she had already signed a lease with Lowry prior to meeting Herbert.[3]

Equally unavailing is Plaintiff's argument that applicable federal regulations and PHA's own Administrative Plan ("Plan") trump the waiver provision of the HAP Contract. Plaintiff correctly notes that PHA receives funding from the United States Department of Housing and Development ("HUD") and is therefore subject to HUD regulations regarding the provision of public housing. HUD regulations provide the following:

> In selection of families for admission to its public housing program . . . the PHA is responsible for screening family behavior and suitability for tenancy. The PHA may consider all relevant information, which may include, but is not limited to . . . [a] criminal background involving crimes of physical violence to persons or property and other criminal acts which would adversely affect the health and safety or welfare of other tenants.

---

[3] For similar reasons, Plaintiff would be unable to prevail on her substantive fraudulent misrepresentation cause of action as one of the elements necessary for establishing a prima facie case of fraudulent misrepresentation is that a defendant's false representation was made for the purpose of inducing a plaintiff to act in reliance on that representation. *Francis v. Stinson*, 2000 ME 173, ¶ 38, 760 A.2d 209, 217. Such reliance is absent in this case.

10

24 C.F.R. § 960.203. Similarly, the Plan stated that "[a]pplicants will be denied admission to the program if they have been convicted of any criminal act of violence or illegal drug activity within 3 years prior to the date of the certification interview."

Although the HUD regulation and the Plan demonstrate that PHA did have a responsibility to screen potential participants for a criminal history and other factors that might make them unsuitable tenants, this screening was for purposes of determining whether the potential tenant was a good candidate to participate in PHA's rental assistance program. There is nothing in the federal regulation or the Plan that demonstrates an intention to relieve a landlord of her traditional responsibility to screen her own tenants to ensure that they satisfy the landlord's requirements. Therefore, the federal regulations and the Plan do not trump the express waiver language of the HAP Contract and Plaintiff is barred from recovery in the present suit.

The entry is:

> Defendants' motion for summary judgment is GRANTED. Judgment for Defendants on all counts of Plaintiff's amended complaint.
>
> The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated at Portland, Maine this _23rd_ day of _____, 2007.

Roland A. Cole
Justice, Superior Court

11

F COURTS
ind County
3ox 287
ne 04112-0287

HOWARD REBEN ESQ
PO BOX 7060"
PORTLAND ME 04112

F COURTS
ind County
iox 287
ne 04112-0287

ROBERT LASKOFF ESQ
PO BOX 7206
LEWISTON ME 04243