STATE OF MAINE                                    SUPERIOR COURT
PENOBSCOT, ss.                                    Docket No. CV-00-218

Louis Janicki,                    )
          Plaintiff,              )
                                  )        **ORDER ON DEFENDANTS'**
                                  )        **MOTION FOR RELIEF**
       v.                         )        **FROM JUDGMENT**
                                  )
                                  )
John Bapst Memorial               )
High School, et al.[1]            )

FILED AND ENTERED
SUPERIOR COURT

OCT 02 2001

PENOBSCOT COUNTY

Defendants John Bapst Memorial High School ("JBHS"), Joseph Sekera ("Sekera"), John McDevitt ("McDevitt"), William Hogan ("Hogan"), and James Haddix ("Haddix") have moved, pursuant to M.R. Civ. P. 60 (b)(1), for relief from an order dated May 10, 2001 (the "May 10th Order"), in which this Court denied in part and granted in part the defendants' Motion to Dismiss Counts I and II of the plaintiff, Lonis Janicki's ("Janicki"), complaint.[2] Specifically, the Court dismissed Count I as to the individual defendants, dismissed all claims for damages in excess of the contract amount in Count I, and denied the defendants' request to dismiss Count II as an entire claim and as to the individual defendants. The defendants now ask this Court to correct two inadvertent mistakes in the May 10th Order. First, the defendants ask the Court to correct its unintentional failure to dismiss Count II against the individual defendants. Second, they ask the Court to clarify the May 10th Order to reflect the fact that the defendants conceded Janicki's contractual employee status only for the purposes of the Motion to Dismiss. That request is granted. For the reasons stated below, the defendants' remaining motion is denied.

---

1. Joseph Sekera, John McDevitt, William Hogan, James Haddix, Bill Therriault, and Maryellen Therriault.

2. Count I of the complaint is a breach of contract claim, and Count II is a wrongful discharge claim.

# ANALYSIS

The Court may relieve a party from an order for mistake, inadvertence, surprise, or excusable neglect. M.R. Civ. P. 60 (b)(1).

## A. Count II and the Individual Defendants

In the May 10th Order, the Court denied the defendants' Motion to Dismiss Count II for two reasons. First, "the allegations of Count II may well fall within the scope of the relief sought [in Count III]. At this juncture that is not clear." Second, it is not clear whether Janicki can recover under a theory of wrongful discharge, as the Law Court has not specifically accepted or rejected the common law claim. In denying the defendants' motion to dismiss for Count II, this Court followed the standards of a M.R. Civ. P. 12 (b)(6) motion, namely that dismissal of a complaint for failure to state a claim is appropriate only if it appears beyond doubt that the plaintiff is entitled to no relief under any set of facts which he might prove in support of his claim. Larrabee v. Penobscot Frozen Foods, 486 A.2d 97, 99 (Me. 1984).

The defendants now argue that the Court inadvertently failed to dismiss Count II as to the iudividual defendants. In support of their contention, the defendants state:

> [t]he same logic which applied to dismiss the individual Defendants from Count I applies to dismiss those same individual Defendants from Count II. In the same way that it is the Defendant as an entity that would have the responsibility for an alleged breach of contract under Count I, it is also the Defendant as an entity that would have the responsibility for an alleged wrongful discharge under Count II. (emphasis original).

The Court disagrees. The defendants are mistaken in their assertion that because the individual defendants are not liable under contract principles, they are also not liable under tort principles. Although it is true that the individual defendants are not liable under a contract theory, they may be liable under a tort theory. Wrongful discharge is a tort theory. See Bard v. Bath Iron Works Corp., 590 A.2d 152, 156 (Me. 1991) ("where

2

a statutory right and remedy are provided, there is no need to recognize a redundant *tort* [of wrongful discharge].") (emphasis added).

If the individual defendants were acting as agents of JBHS when they purportedly wrongfully terminated Janicki, they may be held liable for those actions.

> An agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal, except where he is exercising a privilege of the principal, or a privilege held by him for the protection of the principal's interests, or where the principal owes no duty or less than the normal duty of care to the person harmed. Restatement (Second) of the Law of Agency § 343 (1958).

The application of these principles to the question before the Court leads to the conclusion that the individual defendants may be held personally liable for their tortious conduct, even if JBHS may also be held liable. The liability of the individual defendants, however, depends upon each individual's own tortious conduct.

Janicki has met his burden to withstand a motion to dismiss. Assuming all of the facts in the complaint are true, Janicki has shown that he is entitled "to relief pursuant to some legal theory." In Re Wage Payment Litigation, 2000 ME 162, ¶ 3, 759 A.2d 217, 220. At this juncture, the Court cannot say that the defendants have shown that Janicki is entitled to no relief under any set of facts which he might prove in support of his claim. The Court did not inadvertently fail to dismiss Count II. Accordingly, the defendants' motion for relief on this matter is denied.

## B. Concession of Jauicki's Contractual Employee Status

For purposes of M.R. Civ. P. 12 (b)(6) motions, the material allegations set forth in Janicki's complaint are taken as admitted. See Larrabee v. Penobscot Frozen Foods, 486 A.2d 97, 98 (Me. 1984).

In the May 10th Order, the Court stated: "In the Court's view, Defendants admit the existence of a contract claim in their writing where

3

they say: '[E]ven if Count I withstands dismissal, it is improper to the extent that it seeks damages over and above the value of the contract.' The Court agrees."

The defendants argue that their statement that Janicki was a contractual employee of JBHS was for the purposes of the Motion to Dismiss only. The Court understands and agrees with this argument. Accordingly, the defendants' statement that Janicki was a contractual employee will be taken as conceded for purposes of their Motion to Dismiss only.

The docket entry is:

The defendants' Motion for Relief on the dismissal of Count II as to the individual defendants is denied. The defendants' Motion for Relief as to the request that the May 10, 2001 Order reflect that the defendants concede Janicki's contractual employee status only for purposes of their Motion to Dismiss is allowed.

DATED: October 1, 2001

_____
Francis C. Marsano
Justice, Superior Court

4

Date Filed __11/17/2000__  PENOBSCOT   Docket No. __CV-2000-218__

County

DISMISSED - 5/10/01 - JOSEPH SEKERA, JOHN MCDEVITT,
WILLIAM HOGAN & JAMES HADDIX

Action __CONTRACT__

ASSIGNED TO JUSTICE FRANCIS C MARSANO

JOHN BAPST MEMORIAL HIGH SCHOOL,
JOSEPH SEKARA, JOHN MCDEVITT,
WILLIAM HOGAN, JAMES HADDIX,
BILL THERRIAULT & MARYELLEN THERRIAULT

LOUIS JANICKI          vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| BILLINGS & SILVERSTEIN<br>P O BOX 1445 - 47 Main Street<br>BANGOR ME 04402-1445<br>BY: Jeffrey M. Silverstein, Esq. | Law Office of Carl F. Rella, P.A.<br>PO Box 2700<br>Bangor, Maine  04402-2700<br>BY: Carl F. Rella, Esq.<br>FOR: Mary Ellen Theriault & Bill Theriault |

Paul W. Chaiken, Esq.
P O Box 1401 - 84 Harlow St.
Bangor, Maine 04402-1401
For:  John Bapst Memorial High School,
Joseph Sekera, John McDevitt, William
Hogan, and James Haddix

Date of
Entry

STATE OF MAINE                    SUPERIOR COURT
PENOBSCOT, SS.                    CIVIL ACTION
                                 Docket No. CV-00-218
                                 JLH-PEN- 6 10/2002

FILED & ENTERED
SUPERIOR COURT

JUN 1 0 2002

PENOBSCOT COUNTY

Louis Janicki,
        Plaintiff

                                 Order on Motion for Summary
                                 Judgment (Motion of Defendants
        v.                       John Bapst Memorial High School, Joseph
                                 Sekera, John McDevitt, William Hogan and
                                 James Haddix)          ·

DONALD L. GARBRECHT
LAW LIBRARY

John Bapst Memorial High School et al.,
        Defendants

[JUN 14 2002

        Pending before the court is the motion for summary judgment filed by defendants

John Bapst Memorial High School ("John Bapst"), Joseph Sekera, John McDevitt,

William Hogan and James Haddix (collectively, "the movants").[1] In their motion, they

seek judgment on count 2 of the complaint, which alleges wrongful discharge from

employment.  McDevitt, Hogan and Haddix also seek judgment on count 3, which has

been construed to set out a claim against those parties for wrongful interference with

contractual relations.[2]  In association with this motion, the movants and the plaintiff have

filed written argument and rule 56(h) materials.  The court has considered these

submissions.

        The relevant portions of the record on summary judgment establish the following

facts.  In June 2000, John Bapst and the plaintiff executed a written agreement under

which the plaintiff would serve as the boys soccer coach for the upcoming fall season.

---

[1] The remaining defendants, Mary Ellen Therriault and Bill Therriault, also have filed a
motion for summary judgment.  That motion rests on a separate record and involves
several legal issues that differ from those raised in the motion addressed here.  The
Therriaults' motion will be considered in a separate order.

[2] In count 1 of the complaint, the plaintiff alleged that each of the movants at bar is liable
for breach of contract.  By prior order, the court dismissed the contract claims asserted
against the individual movants.  The remaining respondent on count 1, John Bapst, does
not challenge the contract claim in the pending motion.

1

DSMF ¶ 14. The plaintiff had held the same position during the two previous seasons. DSMF ¶¶ 5-6. In July 2000, defendants Mary Ellen Therriault and Bill Therriault sent John Bapst's principal, defendant Joseph W. Sekera, a letter in which they expressed concerns about comments made during the previous year by the plaintiff to members of the John Bapst soccer team. DSMF ¶¶ 19-20. The Therriaults had been advised of the plaintiff's comments by their son, who was a member of the team. DSMF ¶ 19. In the letter, the Therriaults told Sekera that the plaintiff "regularly used sexual comments in his practices such as 'great day for a blow job, boys,'" that the plaintiff used descriptive phrases such as "pussy-like" and that the plaintiff joked with a student about oral sex. DSMF ¶¶ 21-22. The plaintiff eventually conferred with Robert Cimbollek, who was the athletic director at John Bapst. DSMF ¶ 31. Either then or later, the plaintiff acknowledged that once he told members of the soccer team that it was a "great day for a blow job." *Id.* Cimbollek told the plaintiff, directly or indirectly, that he might contact some of the team players to find out what had happened, in light of what Cimbollek reported was the plaintiff's initial uncertainty about the statements. DSMF ¶¶ 31, 34 PSMF ¶ A5.[3] The plaintiff spoke with three team members about his conduct or their reaction to it. DSMF ¶¶ 38-39.

Sekera then met with the plaintiff. DSMF ¶ 35. The plaintiff reiterated that he had told members of the team one time that "it was a great day for a blow job" but denied making the other statements noted in the Therriaults' letter. DSMF ¶ 31. Sekera told the plaintiff of his displeasure with the plaintiff's conduct and then said, as the plaintiff recounted, that he (Sekera) would contact the Therriaults, advise them of his meeting with the plaintiff and then "move forward." *See* DSMF ¶ 37 and "defendants' reply;" PSMF ¶ 6 and defendants' response. According to the plaintiff, Sekera also said that the next step would be determined after the Therriaults' had a chance to respond to that development. *Id.* The plaintiff and Sekera met again within several days, this time with Cimbollek, and the plaintiff again acknowledged making the one statement. DSMF ¶¶ 40-41.

---

[3] Cimbollek's testimony on this point is not entirely clear, as the parties have pointed out in their rule 56(h) statements. However, those statements and the portions of the record to which those statements refer support the factual points noted in the text.

2

Sekera subsequently met with Cimbollek, defendant Haddix (a member of the John Bapst board of trustees and a recipient of a copy of the Therriaults' letter), defendant McDevitt (the chairman of the board of trustees) and defendant Hogan (a member of the board of trustees and chair of the board's athletic committee). DSMF ¶¶ 42-43. Sekera' only substantive discussion of these matters with the defendant board members occurred during this meeting. DSMF ¶ 45. Sekera advised the others of the plaintiff's acknowledgement. DSMF ¶ 44. McDevitt indicated that he was upset that the plaintiff had contacted team members to discuss the Theriaults' allegations. PSMF ¶ A8. Sekera then told the three board members that he would make any decision regarding plaintiff but would consider their advice. DSMF ¶ 44.[4] Haddix, McDevitt and Hogan recommended that Sekera terminate the plaintiff immediately. DSMF ¶ 48. The Board members told Sekera that they were not attempting to pressure him into making that decision. *See* Defendants' response to PSMF ¶ A9. Nonetheless, because of the manner in which those board members expressed their recommendation, Sekera excused Cimbollek from the meeting and confirmed with the board members that it was within his authority, rather than theirs, to make the decision affecting the plaintiff. *See* DSMF ¶¶ 49-50 and record references to Sekera deposition transcript at p. 30, l. 16-24; p. 33, l. 7-11; p. 86, l. 1-4.

After the meeting, Sekera told Cimbollek and then the plaintiff himself that he (Sekera) had decided to terminate the plaintiff as the soccer coach. DSMF ¶ 51. Cimbollek told Sekera that he would submit his own resignation the next day. PSMF ¶

---

[4] The plaintiff denied DSMF ¶ 44. However, a portion of the basis for that denial is not supported by a meaningfully precise record reference, and the remaining ground for the denial is not grounded on admissible evidence. Therefore, DSMF ¶ 44 is deemed admitted.

In addition to this particular statement of material fact, there are several other record references to Cimbollek's deposition transcript in which Cimbollek expresses his opinion on the existence of pressure brought to bear on the people who were involved directly or indirectly in the decision to terminate the plaintiff, and his opinions about the motivations of the underlying decision to terminate the plaintiff. *See, e.g.,* record references associated with DSMF ¶¶ 37, 50, PSMF ¶ A 9, A11-12, A22. To the extent that those record references are to Cimbollek's opinions and interpretations rather than to admissible data based on personal knowledge, the court disregards them. *See Bahre v. Liberty Group, Inc.,* 2000 ME 75, ¶ 12, 750 A.2d 558, 561 (material filed in opposition to a motion for summary judgment must be based on the witness' personal knowledge).

3

A19. The plaintiff requested a written explanation of the basis for the employment action. DSMF ¶ 52. Sekera wrote that the plaintiff was terminated for using inappropriate language. Although not included in the writing, Sekera stated that he also based his decision on the plaintiff's solicitation of some soccer team members for their account of the plaintiff's conduct. *See id.*, plaintiff's reply and defendants' response.

Historically, Sekera held the responsibility for deciding whether to fire an athletic coach, although that often occurred on the basis of Cimbollek's recommendation. *See* DSMF ¶ 4, plaintiff's response and defendants' reply; PSMF ¶ A4 and defendants' response.

Although the record on this motion does not specify the sequence of events, near the date of the meeting among Sekera, Cimbollek and the board members, Ms. Therriault told Haddix that she had been advised that the plaintiff was considering filing a lawsuit against her.[5] PSMF ¶ A17.

A year prior to these events, in April 1999, the plaintiff learned from two soccer team members that a teacher asked a student to pull down the pants of another student. DSMF ¶ 7. The plaintiff relayed this information to Cimbollek and Sekera. DSMF ¶¶ 8-9. Sekera and the plaintiff did not discuss the matter further. DSMF ¶ 11. The plaintiff believes that Haddix, McDevitt and Hogan pressured Sekera to terminate the plaintiff for reasons related to the complaint he made against the teacher allegedly involved in the 1999 incident. DSMF ¶¶ 53, 55. However, the plaintiff does not know whether Haddix or Hogan were aware of that complaint at the time they recommended termination in August 2000, *see* DSMF ¶ 53, plaintiff's response and defendants' reply, and there is no record evidence that McDevitt had any such knowledge at that time.[6] This incident was

---

[5] In his opposing statement of material fact, the plaintiff suggests that within a few days of the meeting among Sekera, Cimbollek and the three board members, Ms. Therriault spoke with Haddix and that Haddix told her "that the Plaintiff might not continue to serve as JBHS [John Bapst] coach." PSMF ¶ A17. This proposition is not supported by the record reference, and the court therefore disregards it.

[6] In his response to DSMF ¶ 57, the plaintiff makes a record reference to evidence that prior to June 2000, McDevitt made a comment to a third person that he (McDevitt) knew the plaintiff's name and "wasn't enamored" to hear it. This evidence is not admissible. Although McDevitt's purported statement itself is admissible, *see* M.R.Evid. 801(d)(2), that statement is offered through a third person. To the extent revealed by this record,

4

not discussed at the meeting that Sekera held with Cimbollek, McDevitt, Hogan and Haddix shortly prior to the plaintiff's termination. DSMF ¶ 46.

Summary judgment is proper only if the record on summary judgment shows that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *See* M.R.Civ.P. 56. To survive a motion for a summary judgment, the opposing party must produce evidence that, if produced at trial, would be sufficient to resist a motion for a judgment as a matter of law; "[t]he plaintiff must establish a *prima facie* case for each element of the cause of action." *Rodrigue v. Rodrigue*, 1997 ME 99, ¶8, 694 A.2d 924, 926. If the evidence favoring the nonmoving party is 'merely colorable, or is not significantly probative, summary judgment may be granted." *Bouchard v. American Orthodontics*, 661 A.2d 1143, 1145 (Me. 1995) (internal punctuation and citation omitted).

## A. Wrongful discharge (count 2)

In count 2 of his complaint, the plaintiff alleges that John Bapst, Sekera, McDevitt, Hogan and Haddix are liable for the common law tort of wrongful discharge from employment. Maine has not yet recognized this as a valid cause of action. *Bard v. Bath Iron Works Corp.*, 590 A.2d 152, 156 (Me. 1991). In cases where this claim has been raised and deferred by the Law Court, the Court has noted that in the majority of those jurisdictions where this cause of action has been adopted, it is limited to circumstances where "the employer's motives violate some clearly defined public policy." *Larrabee v. Penobscot Frozen Foods, Inc.* 486 A.2d 97, 100 (Me. 1984).

In his opposition to the motion at bar, the plaintiff relies on *Larrabee* to define a claim for wrongful discharge as one where the employer is motivated by ill will, personal animosity or malice toward the employee. "Plaintiff's Rule 7(c) Memorandum in Opposition to Summary Judgment Motion Filed by Defendants' [sic] John Bapst, et al." at p. 6. This correctly reflects the nature of Larrabee's allegations in that case. *See* 486 A.2d at 100. However, in its opinion, the *Larrabee* Court went on to discuss other jurisdictions' treatment of the wrongful discharge claim as one that would provide redress when the employer is motivated by "some clearly defined public policy." *Id.* Continuing

---

there is no hearsay exception that would support the admission of the third party's testimony of McDevitt's earlier comment.

5

with its discussion, the Court then noted, "We do not rule out the possible recognition of *such* a cause of action when the discharge of an employee contravenes some strong public policy." *Id.* In this way, the Law Court made clear the limited potential application of a wrongful discharge claim, and an employment action predicated on ill will, personal animosity or rancor toward an employee – in the absence of the breach of a strong public policy – is therefore insufficient. Consequently, to defeat the motion for summary judgment on count 2 in this case, the plaintiff must raise a genuine issue of material fact regarding the existence of a strong public policy that was violated when he was discharged. He has failed to raise such an issue.

The dispute between the plaintiff and the movants was "purely private." *See Larrabee*, 486 A.2d at 100. The plaintiff was an employee of a privately operated school. The plaintiff argues on this motion that the true reasons for his termination are "entirely unclear" on this record. "Plaintiff's Rule 7(c) Memorandum in Opposition to Summary Judgment Motion Filed by Defendants' [sic] John Bapst, et al." at p. 9. Because the plaintiff bears the burden of establishing a *prima facie* case for each element of his claims, this observation by itself undermines his argument that the employment action violated a public policy: if the record does not suggest a basis for termination, then it cannot be argued that such a basis embodies a strong public policy interest.

The plaintiff also argues that, to the extent revealed by this record, he may have been terminated because he contacted team members about his prior conduct at the suggestion of the school's athletic director, because he engaged in activities unrelated to his employment obligations and because Ms. Therriault had told Haddix that she had heard of the possibility that the plaintiff would file suit against her. Under the circumstances of this case, the court cannot find that any of these motivations alleged by the plaintiff implicates a "strong public policy." Of these factors, the one that most strongly supports the plaintiff's argument is Therriault's conversation with Haddix about the possibility of litigation. However, there is no evidence that Sekera – who, the record shows, made the termination decision – was aware of this datum. Further, the threatened litigation presumably related to statements regarding sexual activity, allegedly made by a teacher to student-athletes, and which the claimant partially acknowledged that he made. Therefore, even if in some circumstances an employment action in response to an

employee's threat of legal action can be seen to violate a strong and clearly defined public policy interest, it does not arguably do so here.

Finally, this record does not support a factual argument to support the plaintiff's belief that he was discharged because of his 1999 report of the conduct of another teacher. Even if it did, that argument would not generate a legal claim for wrongful discharge because of the statutory protections available to the plaintiff under the Whistleblowers' Protection Act, 26 M.R.S.A. §§ 831 *et seq.* *See Bard*, 590 A.2d at 156.

Therefore, on these grounds, the court concludes that if in Maine there exists a tort of wrongful discharge, such a claim would not be availing to the plaintiff here. The court need not and does not address the movants' remaining arguments in support of their motion for summary judgment on count 3.

## B. Interference with contractual relations (count 3)

In count 3 of his complaint, the plaintiff purports to allege that McDevitt, Hogan and Haddix are liable to him for wrongful interference with contractual relations. In fact, count 3 is framed as a claim against defendants Bill Therriault and Maryellen Therriault only: he seeks money damages from them alone. However, the previous assignee justice ruled in a written order that count 3 should be construed as one that states a claim against the other defendants as well. *See* "Order on Motion to Dismiss" dated May 10, 2001. Through this order, all parties have been placed on notice of the scope of count 3 as viewed by the court, and due to that notice, all defendants have had the opportunity to be heard on the viability of the claim against them.

A factor further defining the parameters of count 3 is the substance of the plaintiff's argument in opposition to the pending motion for summary judgment. In responding to the issues raised by this count, the plaintiff argues only that the record on this motion raises issues regarding the liability of McDevitt, Hogan and Haddix. He makes no such argument with respect to John Bapst or Sekera.[7] From this, the court infers that the plaintiff does not seek to pursue his claim in count 3 against those two defendants.

---

[7] Clearly, this claim could not be brought against John Bapst, because the school was one of the parties to the contract itself.

7

Therefore, against this background, the court treats count 3 as a claim against McDevitt, Hogan and Haddix, as well as against Bill Therriault and Maryellen Therriault.[8]

A claim for wrongful interference with contractual relations requires proof of the following elements: (1) the existence of a valid contract between the claimant and a third party; (2) interference by the defendant with that contract through fraud or intimidation;[9] (3) the loss of the contractual benefits that would have continued in the absence of the intimidation; and (4) damages. *James v. MacDonald*, 1998 ME 148, ¶ 7, 712 A.2d 1054, 1057; *Pombriant v. Blue Cross/Blue Shield of Maine*, 562 A.2d 656, 659 (Me. 1989); *MacKerron v. Madura*, 445 A.2d 680, 683. The fraud that may be sufficient to sustain a claim for this cause of action carries its conventional meaning: "(1) mak(ing) a material representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether its is true (4) for the purpose of inducing another to act or refrain from acting in reliance on it, (5) and the other person justifiably relies on the representation as true and acts upon it to the damage of the plaintiff." *Petit v. Key Bank of Maine*, 688 A.2d 427, 430 (Me. 1996). As used in the definition of this claim, "intimidation" means "some threat a defendant made that was within its control to fulfill." *Town and Country Motors, Inc. v. The Bill Dodge Automotive Group, Inc.*, 115

---

[8] Against the same background, it is immaterial whether this court agrees with the construction of count 3 developed by the prior assignee justice.

[9] The plaintiff frames his opposition to this part of the motion based in part on an argument that this claim may be established if the defendant's conduct amounted to fraud, intimidation, misconduct or undue influence. Those latter two circumstances appear to be based on the Law Court's references to them in *Northeast CoatingTechnologies, Inc.*, 684 A.2d 1322, 1325 (Me. 1996) and *Town of Lisbon v. Thayer Corp.*, 675 A.2d 514, 517 (Me. 1996). In both of those cases, however, the Court defined the tort of wrongful interference with contractual relations, in the classic form, that is, by requiring proof of fraud or intimidation, but limiting the claim to those circumstances. *Northeast Coating*, 684 A.2d at 1325; *Town of Lisbon*, 675 A.2d at 517. Then, in both cases, the Court went on to conclude that the plaintiff had not presented evidence of any of those forms of conduct. From that context, this court does not take the Law Court's references to undue influence and misconduct as signaling an expansion of conduct that is actionable. Rather, undue influence and misconduct are best seen as synonymous with fraud and intimidation. Nonetheless, even if undue influence and misconduct have meanings that go beyond the meanings of fraud and intimidation, the plaintiff has not made out a prima facie case of such allegations on this record.

8

F.Supp.2d 31, 33 (D.Me. 2000). Fraud or intimidation in the context of a claim for wrongful interference with contractual relations may be established by a preponderance of the evidence. *Petit*, 688 A.2d at 432-433.

Here, the plaintiff does not argue meaningfully that McDevitt, Hogan or Haddix, engaged in fraudulent conduct, and the record would not support such an argument. Additionally, the record at bar does not allow a genuine factual contention that any of those defendants engaged in intimidation, as that term is used in *Town and County Motors*, to interfere with the employment contract between the plaintiff and John Bapst. There is no evidence that any of the board members made any threats or that any of them, as individual members of the Board of Trustees, had the power to carry out any threat they could make. At most, the record supports a factual argument that the board members strongly recommended to Sekera that he terminate the plaintiff's employment as a soccer coach. Sekera agreed with that recommendation, but only after he admonished the board members that the decision was his rather than theirs. However, there can be no argument on this record that the board members made a threat of some sort that was within their control to accomplish.

The entry shall be:

For the foregoing reasons, the court grants the motion for summary judgment filed by defendants John Bapst Memorial High School, Joseph Sekera, John McDevitt, William Hogan and James Haddix. Summary judgment is entered for those defendants on counts 2 and 3 of the complaint.

Dated: June 10, 2002

Justice, Maine Superior Court

Date Filed __11/17/2000__ ____PENOBSCOT____ Docket No. ____CV-2000-218____

County

⚓DISMISSED – 5/10/01 – JOSEPH SEKERA, JOHN MCDEVITT,
WILLIAM HOGAN & JAMES HADDIX

Action __CONTRACT__

Justice Mead **recused**

ASSIGNED TO JUSTICE FRANCIS C MARSANÒ
**RE-ASSIGNED TO JUSTICE ANDREW M. MEAD**
**REASSIGNED TO JUSTICE JEFFREY L. HJELM**

JOHN BAPST MEMORIAL HIGH SCHOOL,
⁕JOSEPH SEKARA, ⁕JOHN MCDEVITT,
*WILLIAM HOGAN,*JAMES HADDIX,
BILL THERRIAULT & MARYELLEN THERRIAULT

LOUIS JANICKI

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| BILLINGS & SILVERSTEIN<br>P O BOX 1445 – 47 Main Street<br>BANGOR ME 04402-1445<br>BY: Jeffrey M. Silverstein, Esq. | Law Office of Carl F. Rella, P.A.<br>PO Box 2700<br>Bangor, Maine 04402-2700<br>BY: Carl F. Rella, Esq.<br>FOR: Mary Ellen Theriault & Bill Theriault |
| | Paul W. Chaiken, Esq.<br>P O Box 1401 – 84 Harlow St.<br>Bangor, Maine 04402-1401<br>For: John Bapst Memorial High School,<br>Joseph Sekera, John McDevitt, William<br>Hogan, and James Haddix |

| Date of Entry | |
|---|---|
| 11/17/00 | Complaint filed – Exhibits 1 & 2 attached. |
| 11/17/00 | Case File Notice Postcard forwarded to Plaintiff's counsel. |
| 11/29/00 | Officer's Return of Service as to Bill Therriault filed (s.d. 11/21/00) |
| 11/29/00 | Officer's Return of Service as to Maryellen Therriault filed. (s.d. 11/21/00) |
| 12/6/2000 | Defendants' Answer to the Plaintiff's Complaint Filed. |
| 12/6/2000 | Notification of Discovery Service Filed by Defendants; Defendants' Interrogatories Propounded to Plaintiff. |
| 12/7/00 | Acknowledgment of Receipt of Summons and Complaint as to Defendant John Bapst Memorial High School filed. (s.d. 12/6/00) by Paul W. Chaiken, Esq. |
| 12/7/00 | Acknowledgment of Receipt of Summons and Complaint as to Defendant Joseph Sekara filed.(s.d. 12/6/00) by Paul W. Chaiken, Esq. |
| 12/7/00 | Acknowledgment of Receipt of Summons and Complaint as to Defendant John McDevitt filed. (s.d. 12/6/00) by Paul W. Chaiken, Esq. |
| 12/7/00 | Acknowledgment of Receipt of Summons and Complaint as to Defendant William Hogan filed. (s.d. 12/6/00) by Paul W. Chaiken, Esq. |
| 12/7/00 | Acknowledgment of Receipt of Summons and Complaint as to Defendant James Haddix filed. (s.d. 12/6/00) by Paul W. Chaiken, Esq. |
| 12/22/00 | By letter, Atty. Paul Chaiken indicates he will be representing the defendants John Bapst Memorial High School, Joseph Sekera, John McDevitt, William Hogan, and James Haddix. |

STATE OF MAINE                          SUPERIOR COURT
PENOBSCOT, SS.                          CIVIL ACTION
                                        Docket No. CV-00-218

FILED & ENTERED
SUPERIOR COURT
JUN 12 2002
PENOBSCOT COUNTY

Louis Janicki,
        Plaintiff

                                        Order on Motion for Summary
                                        Judgment (Motion of Defendants
          v.                            Mary Ellen Therriault and Bill
                                        Therriault)          DONALD L. GARBRECHT
                                                             LAW LIBRARY

John Bapst Memorial High School et al.,                      ꞌJUN 21 2002
        Defendants


        Pending before the court is the motion for summary judgment filed by defendants

Mary Ellen Therriault and Bill Therriault.[1] In their motion, they seek judgment on all

claims pending against them: wrongful interference with contractual relations (count 3),

defamation (count 4), intentional infliction of emotional distress (count 5) and negligent

infliction of emotional distress (count 6). In association with this motion, the Therriaults

and the plaintiff have filed written argument and rule 56(h) materials. The court has

considered these submissions.

        The relevant potions of the record on summary judgment establish the following

facts. The Therriaults' son, Colby, entered John Bapst High School as a freshman in the

fall of 1999 and played on the junior varsity soccer team that was coached by the

plaintiff. DSMF ¶¶ 1-4, POSMF ¶ 3. Colby's interest in soccer appeared to wane during

the summer of 2000, but he was reluctant to advise his parents of the reason. DSMF ¶ 4.

He eventually told Mary Ellen Therriault that the plaintiff frequently made comments that

he felt were inappropriate. DSMF ¶ 5. These included the remark, "It's a great day for a

blow job, boys," and the comment that Colby "was playing like a pussy." *Id.* Colby told

---

[1] The remaining defendants, John Bapst Memorial High School, Joseph Sekera, John
McDevitt, William Hogan and James Haddix, also filed a motion for summary judgment.
That motion, which rests on a separate record and involves several legal issues that differ
from those raised in the Therriaults' motion, is addressed in an order dated June 10, 2002.

1

Mary Ellen that these comments were not isolated. DSMF ¶ 6.[2] He also indicated his willingness to discuss the matter with school officials if necessary. DSMF ¶ 7.

Mary Ellen prepared a letter that she and Bill Therriault signed and that, on July 21, 2000, she sent to defendant Joseph Sekera, who was the principal of John Bapst. DSMF ¶¶ 8-9, 13.[3] She also sent a copy to Robert Cimbollek, the school's athletic director, and to James Haddix, a member of the school's board of trustees, whom she knew. DSMF ¶ 9. Mary Ellen did not send a copy of the letter to the plaintiff or contact him directly about this matter. DSMF ¶ 10; POSMF ¶ A9. Mary Ellen was familiar with a "Parent/Coach Communication Guide" provided to the parents of student-athletes. POSMF ¶ A6. The "guide" indicates that "[t]he treatment of your child, mentally and physically," is an appropriate topic of conversation between a parent and a coach and that the parent can meet with the school's athletic director, if the meeting with the coach was not satisfactory. POSMF ¶ 15. However, because of the nature of the comments that the plaintiff reportedly made to the soccer team members, Mary Ellen felt that it would be more appropriate for school officials to address this problem with the plaintiff. DRSMF ¶ A9.

After Cimbollek learned of the allegations in the Therriault letter, he advised the plaintiff that if he (the plaintiff) could not remember whether he made the statements of concern to the Therriaults, the plaintiff should contact members of the soccer team to try to determine if the allegations were true. POSMF ¶ 24. After Sekera had met with the plaintiff and Cimbollek, Sekera learned that the plaintiff had made those player contacts. DSMF ¶¶ 21-23.

_____

[2] In his opposing statement of material fact, the plaintiff asserts that he was told by a third person that Colby was unhappy that he was not selected as a member of the school's varsity soccer team. *See* POSMF ¶ A25. This statement constitutes hearsay within hearsay. Although Colby's statement may be admissible, *see* M.R.Evid. 803(3), the declaration of Colby's prior statement does not fall within any hearsay exception and is thus inadmissible. *See* M.R.Evid. 805.

[3] The Therriaults' letter was apparently marked as exhibit 1 during the deposition of the plaintiff. Unlike the other exhibits to that deposition, that one is not included with the transcript. During the plaintiff's deposition testimony, however, he stated that the exhibit is the same as the one appended to his complaint. (Janicki deposition page 5, line 19.) The court has used the latter for purposes of this motion.

conversation with Sekera on August 7. POSMF ¶¶ A18-A19. Mary Ellen advised Sekera that she had learned that the plaintiff had discussed her letter with a student. POSMF ¶ A18; DRSMF ¶ A18. Mary Ellen expressed concern either that the letter was on the internet, *see* POSMF ¶ A18 (Sekera's testimony) or that the school's students might use the internet as a conduit to discuss the issues raised in her letter, *see* DRSMF ¶ A18 (Mary Ellen's testimony).[6] The use of the internet had no bearing on Sekera' ultimate decision to fire the plaintiff. DRSMF ¶ A18. She told Sekera that if the plaintiff denied discussing the letter with students, she would disclose to Sekera the name of the student whom she understood had such a conversation with the plaintiff. DRSMF ¶ A18.

Also on August 7, Mary Ellen spoke with Haddix but did not made any suggestions to him about the course she felt the school should take regarding the plaintiff. POSMF ¶ A20; DRSMF ¶ A20. She spoke again with Haddix on August 10 and told him that she had learned that the plaintiff had refused to rent ice time to a hockey team on which Colby was a member.[7] POSMF ¶ A20; DRSMF ¶ A20. She also informed Haddix that she had learned that the plaintiff was contemplating legal action against her and her husband. POSMF ¶ A20. Haddix responded that he had concerns about the plaintiff's

---

[6] At a meeting between the plaintiff and Sekera, Sekera asked the plaintiff if he had posted the Therriaults' letter on the internet. POSMF ¶ A19. There is no evidence in this record regarding who may have posted the letter on the internet – if in fact that was done: the issue remains subject to genuine dispute, although it is not a material issue because it had no affect on the plaintiff's termination. DRSMF ¶ A18.

[7] The plaintiff asserts that the Penobscot Valley Hockey Conference Board was dissatisfied with the plaintiff's decision not to provide ice time for Colby's team and that the board decided not to use the plaintiff's ice rink. *See* POSMF ¶¶ A26-A27. Mary Ellen was a member of that Board. However, on this limited record, the court cannot and does not attribute those board decisions to Mary Ellen. The information regarding the board's dissatisfaction with the plaintiff's decision did not derive from Mary Ellen. Further, Mary Ellen was not involved in the board's decision not to use the plaintiff's rink, and, in any event, she had reservations about that decision because of the limited availability of other facilities. DRSMF ¶ A27. Finally, because the plaintiff's assertions regarding the hockey board's decisions do not set out the date when these events occurred, they cannot be viewed as material because, without some temporal connection to the Therriaults' alleged conduct, they have no relevance. Nonetheless, the comments made by Mary Ellen to Haddix, to the extent set out in the text of this order, remain part of the record.

4

continuation of employment with the school but also said that "they" would continue to look into the matter. *Id.*; DRSMF ¶ A20 and record references.[8]

Several days after his meeting with the plaintiff and Cimbollek, Sekera met with Cimbollek and three members of the school's Board of Trustees, namely, defendants John McDevitt, William Hogan and Haddix. POSMF ¶ A31. During the meeting, Sekera excused Cimbollek from the room so that he (Sekera) could discuss with the board members his impression that they were instructing him to fire the plaintiff. POSMF ¶ A32. After the meeting, Sekera informed the plaintiff of his termination the plaintiff's employment because, as he admitted, he told the members of the soccer team that it was 'a great day for a blow job" and because he had contacted several team members to discuss his conduct. DSMF ¶ 24; POSMF ¶ A33. In response to a request made by the plaintiff, Sekera provided a written statement identifying only the plaintiff's comment as the basis for termination. POSMF ¶ 24.[9]

The plaintiff does not believe that he was fired because of the complaint made by the Therriaults. DSMF ¶ 26.[10]

After he became aware of the Therriaults' letter, the plaintiff has experienced stress-related symptoms and has consulted with a physician. POSMF ¶¶ A38-A39.

---

[8] The record does not support the plaintiff's assertion that Haddix "suggested that the Plaintiff might not continue to serve as JBHS coach." *See* POSMF ¶ A20.

[9] The plaintiff's opposing statement of material facts includes assertions regarding the opinions of the plaintiff and of Cimbollek about the reasons why the school terminated the plaintiff's employment contract. *See, e.g.,* POSMF ¶¶ 25-26, A32, A36-A37 and record references. It also includes an assertion about Cimbollek's impressions about disciplinary decisions made by Sekera against the plaintiff. *See* POSMF ¶ A30. These opinions do not rise to the level of admissible evidence, and to the extent that these assertions go beyond information based on personal knowledge, the court therefore does not consider them as part of the record on the motion at bar.

[10] In response to this assertion made by the movants, the plaintiff qualifies it by stating that the Therriaults' letter "provided JBHS a venue in which to unlawfully terminate him from employment." POSMF ¶ 26. The meaning of this response is unclear. Further, the record reference provided by the plaintiff does not provide support for the response. Therefore, the Therriaults' statement is deemed admitted, and the court disregards the plaintiff's response.

5

Summary judgment is proper only if the record on summary judgment shows that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *See* M.R.Civ.P. 56. To survive a motion for a summary judgment, the opposing party must produce evidence that, if produced at trial, would be sufficient to resist a motion for a judgment as a matter of law; "[t]he plaintiff must establish a *prima facie* case for each element of the cause of action." *Rodrigue v. Rodrigue*, 1997 ME 99, ¶8, 694 A.2d 924, 926. If the evidence favoring the nonmoving party is 'merely colorable, or is not significantly probative, summary judgment may be granted." *Bouchard v. American Orthodontics*, 661 A.2d 1143, 1145 (Me. 1995) (internal punctuation and citation omitted).

A. **Wrongful Interference with Contractual Relations (count 3)**

A claim for wrongful interference with contractual relations requires proof of the following elements: (1) the existence of a valid contract between the claimant and a third party; (2) interference by the defendant with that contract through fraud or intimidation;[11] (3) the loss of the contractual benefits that would have continued in the absence of the intimidation; and (4) damages. *James v. MacDonald*, 1998 ME 148, ¶ 7, 712 A.2d 1054, 1057; *Pombriant v. Blue Cross/Blue Shield of Maine*, 562 A.2d 656, 659 (Me. 1989); *MacKerron v. Madura*, 445 A.2d 680, 683. The fraud that may be sufficient to sustain a claim for this cause of action carries its conventional meaning: "(1) mak(ing) a material representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether its is true (4) for the purpose of inducing another to act or refrain

---

[11] The plaintiff frames his opposition to this part of the motion based in part on an argument that this claim may be established if the defendants' conduct amounted to fraud, intimidation, misconduct or undue influence. Those latter two circumstances appear to be based on the Law Court's references to them in *Northeast CoatingTechnologies, Inc.*, 684 A.2d 1322, 1325 (Me. 1996) and *Town of Lisbon v. Thayer Corp.*, 675 A.2d 514, 517 (Me. 1996). In both of those cases, however, the Court defined the tort of wrongful interference with contractual relations, in the classic form, that is, by requiring proof of fraud or intimidation, but limiting the claim to those circumstances. *Northeast Coating*, 684 A.2d at 1325; *Town of Lisbon*, 675 A.2d at 517. Then, in both cases, the Court went on to conclude that the plaintiff had not presented evidence of any of those forms of conduct. From that context, this court does not take the Law Court's references to undue influence and misconduct as signaling an expansion of conduct that is actionable. Rather, undue influence and misconduct are best seen as synonymous with fraud and intimidation.

6

from acting in reliance on it, (5) and the other person justifiably relies on the representation as true and acts upon it to the damage of the plaintiff." *Petit v. Key Bank of Maine*, 688 A.2d 427, 430 (Me. 1996). As used in the definition of this claim, "intimidation" means "some threat a defendant made that was within its control to fulfill." *Town and Country Motors, Inc. v. The Bill Dodge Automotive Group, Inc.*, 115 F.Supp.2d 31, 33 (D.Me. 2000). Fraud or intimidation in the context of a claim for wrongful interference with contractual relations may be established by a preponderance of the evidence. *Petit*, 688 A.2d at 432-433.

The record on summary judgment does not support an argument that John Bapst terminated the plaintiff's employment contract by relying on or acting on the information provided by the Therriaults. Indeed, as is discussed above, the record shows that the plaintiff does not even believe that the Therriaults' letter caused his termination. The record demonstrates that Sekera fired the plaintiff (1) because he admitted telling members of the soccer team that it was a "good day for a blow job" or (2) because he contacted team members about his conduct, or (3) because of the combination of these circumstances. On this record, any other explanation for the school's decision is speculative. The first ground was based on the plaintiff's own admission to Sekera. The second ground arose because Cimbollek advised the plaintiff to take that follow-up action. Neither of these grounds for termination are attributable to the Therriaults.

Similarly, any statement made to Sekera by Mary Ellen regarding the internet is immaterial. The record does not support the plaintiff's argument that she implied to Sekera that the plaintiff posted the letter on the internet (indeed, the record does not even establish that the contents of the letter were published electronically), and the record establishes that this circumstance did not play a part in the school's decision to fire the plaintiff from his coaching position.

Finally, the record contains no evidence that either Mary Ellen Therriault or Bill Therriault intimidated John Bapst (a party to the plaintiff's employment contract) in any way, as that term is used in the context of this type of claim. There is no evidence that either defendant made a threat of any kind. In the letter, the Therriaults stated expressly that they wanted to advise the school of the information that Colby disclosed to them. During subsequently phone conversations between Mary Ellen and school

7

representatives, Mary Ellen made inquiry about the plaintiff's status with the school but did not urge or even suggest that the school take some action.

Because the record provides no factual support for the elements of count 3 discussed in this order, the court need not and does not address the Therriaults' remaining arguments in support of its motion for summary judgment on count 3.

## B. **Defamation (count 4)**

A successful claim for defamation requires proof of a false or defamatory statement concerning another person, an unprivileged publication of that statement to a third party, fault amounting to at least negligence by the publisher, and either an actionable statement regardless of special harm or special harm caused by the publication. *Rice v. Alley*, 2002 ME 43, ¶ 19, 791 A.2d 932, 936.

Here, the allegedly defamatory comments consist of the following statements made by the Therriaults: (1) that the plaintiff told members of the soccer team that it was a "great day for a blow job;" (2) that the plaintiff described the quality of the members' play as "pussy-like;" (3) that the plaintiff joked with a student about oral sex with his girlfriend; and (4) that the plaintiff made such sexually oriented comments regularly. The Therriaults made these statements about the plaintiff's conduct in a letter they sent to Sekera, Cimbollek and Haddix.

In support of their motion for summary judgment on this count, the Therriaults first argue the statements are true or substantially true. The record, however, demonstrates only that the plaintiff once told members of the soccer team that it was a "great day for a blow job." There exists a factual dispute about whether he made that statement more than once, and there also are genuine factual dispute about whether the plaintiff made either of the other statements and about the frequency with which he made any such statements. These issues, which are the subject of these factual disputes, cannot be seen as substantially similar to the statement that the plaintiff agrees he made. "Slight inaccuracies of expression [relative to the statement actually made by the plaintiff] are immaterial provided that the defamatory charge is true in substance." RESTATEMENT (SECOND) OF TORTS § 581A, cmt. f (1977); *McCullough v. Visiting Nurse Service of Southern Maine, Inc.*, 1997 ME 55, ¶ 10, 691 A.2d 1201, 1204. Here, the differences between the one statement made by the plaintiff as established by the record, and the

8

remaining conduct attributed to him by the Therriaults are sufficient to bring them outside of the protective scope of section 581A.[12]

The Therriaults next argue that any allegedly defamatory communications are conditionally privileged and therefore not actionable. "Whether a defendant is entitled to the common law conditional privilege is a question of law; whether the defendant abused the privilege is a question of fact." *Rice*, 2002 ME 43, ¶ 21, 791 A.2d at 936. A communication is conditionally privileged when the recipient of a defamatory statement has an important interest that will be promoted by "frank communication." *Id.*, ¶ 22, 791 A.2d at 936. The privilege promotes free speech, and the conditions or limitations on that privilege ensure that the speech is not "absolutely unfettered." *Id.* Here, the court concludes that statements of the type made by the Therriaults to school officials are entitled to a conditional privilege. The record reveals that parents of a high school student learned, from that student, that a coach made sexualized and highly inappropriate comments to the student and other students of comparable age. There is a high level of importance attached to the disclosure of that information to proper school officials, in order to promote and protect the interests of other students and of the school itself. Further, disclosure of this information to the school directly affects the interests of the publishers (here, the Therriaults) because of the prospects for further contact between the plaintiff and Colby. *See generally* RESTATEMENT (SECOND) OF TORTS at § 594.

When a conditional privilege is abused, it is not available to protect the publisher from liability. A conditional privilege is abused when the statement is made outside of "normal channels" or when it is made with malicious intent. *Rice*, 2002 ME, ¶ 23, 791 A.2d at 937. The plaintiff in a defamation action bears the burden of showing that the conditional privilege was abused. *Gautschi v. Maisel*, 565 A.2d 1009, 1011 (Me. 1989). To determine whether, on this record, the plaintiff has generated a contention that the Therriaults abused their conditional privilege, it is necessary to bifurcate the allegedly defamatory material.

---

[12] The Therriaults do not raise the related but separate question of whether this record supports an allegation that they were negligent in any aspect of their conduct that is within the scope of the plaintiff's defamation claim. *See generally* RESTATEMENT (SECOND) OF TORTS at §§ 580A-580B. Therefore, the court does not address that issue except in the context of the conditional privilege raised by the defendants.

First, while the record establishes that Colby was the source of most of the Therriaults' information, that record does not establish the basis for their understanding that the plaintiff joked with students about oral sex with his girlfriend.[13] A statement is made maliciously when the person making the statement recklessly disregards the truth or falsity of the statement. *Cole v. Chandler*, 2000 ME 104, ¶ 7, 752 A.2d 1189, 1194. Because the record at bar provides no basis for Mary Ellen to have believed that this portion of her statement was true, the court concludes that the record generates a genuine issue of material fact concerning the applicability of the conditional privilege as it relates to this aspect of the communication.

With respect to the remaining components of the Therriaults' written communication with Sekera, however, the record demonstrates that they did not act maliciously. Rather, Colby affirmatively provided them with that information that they relayed to the school. It is important to note that Colby was reluctant to disclose his report of the plaintiff's conduct and that he later conveyed a willingness to reiterate this information to school officials. Under these circumstances, there can be no argument that the Therriaults acted with malice in communicating Colby's report to the school.

The next question is whether the Therriaults abused their conditional privilege by relaying this information, which is otherwise protected, directly to Sekera. The plaintiff correctly notes that to maintain the benefit of the conditional privilege, the subject material must be communicated through normal channels. *See Gautschi*, 565 A.2d at 1011. Here, the plaintiff argues that those normal channels consist, first, of direct contact with the coach (here, the plaintiff), and then to the athletic director (here, Cimbollek). This factual argument is based on the contents of the "guide" issued to the parents of student-athletes. In this instance, the Therriaults sent their letter to Sekera, with a copy to Cimbollek and Haddix.

---

[13] In their statement of material fact, the Therriaults assert that this information was based on statements made to Mary Ellen by Debbie Hunter, who was the mother of another John Bapst student. DSMF ¶ 12. However, this assertion has been properly controverted because Ms. Hunter has also denied having any conversation about the plaintiff with Mary Ellen. POSMF ¶ 12.

As support for the reference to "normal channels," the *Gautschi* Court relied on comment a of section 599 in the Restatement.[14] From the commentary in the Restatement, the court gathers that to preserve a conditional privilege, a publisher is required to communicate through "normal channels" in order to prevent the disclosure of the material "to some person not reasonably believed to be necessary for the accomplishment of the particular privilege. . . ." RESTATEMENT (SECOND) OF TORTS at § 599, cmt. a. If the interests justifying the privilege are not promoted by publication to a particular person, then the privilege is abused to the extent that the privilege was exceeded. *See id.* at § 604. "However, this is not true when the publication to those persons is reasonably incidental to the communication of the defamatory material to the person whose knowledge is reasonably believed to be necessary or useful for the protection of the interest." *Id.*, cmt. a. Here, the court concludes here that the scope of the privilege (which is a question of law) is determined on the basis of the nature of the responsibilities of the people to whom the Therriaults sent the letter. In this case, the conditional privilege protects the Therriaults' communications with Cimbollek and Sekera. Cimbollek was the plaintiff's supervisor, and Sekera was the school's principal. Both have a fundamental interest in learning of the type of conduct that the Therriaults described in their letter, and it is indisputably reasonable to believe that it is "necessary or useful" for them to be aware of the information contained in the Therriaults' letter. Therefore, as a matter of law, the Therriaults are protected from liability for defamation on the basis of their communications with them, to the extent that they conveyed information that they received from Colby.

However, the Therriaults also sent a copy of their letter to Haddix, who was a member of the board of directors, because they knew him. The record on the motion at bar contains little information about the role that would be played either by Haddix individually or by the Board of Trustees as an entity, in connection with the personnel issues raised by the Therriaults in their letter. If anything, Sekera's discussion with the board members at the meeting where he excused Cimbollek appears to demonstrate that

---

[14] The Court also cited *Greenya v. George Washington University*, 512 F.2d 556 (D.C. Cir.), *cert. den'd*, 423 U.S. 995 (1975). The opinion in *Greenya* also referred to the "normal channels" requirement but did not elaborate.

11

none of the board members nor the board itself would have the authority to make a termination decision. Any role short of that is not revealed by this record. Consequently, the court concludes that this record leaves open the factual question of whether the Therriaults abused the conditional privilege otherwise available to them with respect to information provided by Colby, when they published that information to Haddix.

The Therriaults argue finally that the record does not support an argument that the plaintiff sustained damages as a result of any defamation. Because the arguable actionable statements may be seen to injure the plaintiff's professional reputation, he is not required to prove actual damages. *Lester v. Powers*, 596 A.2d 65, 69 (Me. 1991); *Saunders v. Van Pelt*, 497 A.2d 1121, 1124-25 (Me. 1985).

## C. **Intentional Infliction of Emotional Distress (count 5)**

In order to prevail on a claim of IIED, the plaintiff must prove here that the defendants intentionally or recklessly inflicted severe emotional distress or were certain or substantially certain that such distress would result from their conduct; that the defendants' conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized community; that the defendants' conduct caused the plaintiff's emotional distress; and that the plaintiff's emotional distress was so severe that no reasonable person could be expected to endure it. *Curtis v. Porter*, 2001 ME 158, ¶ 10, 784 A.2d 18, 22-23. The court is allocated the responsibility to decide whether a defendant's alleged conduct "may reasonably be regarded as so extreme and outrageous to permit recovery. . . ." *Champagne v. Mid-Maine Medical Center*, 1998 ME 87, ¶ 16, 711 A.2d 842, 847.

An analysis of the Therriaults' motion on count 5 must start with an examination of that part of the plaintiff's IIED claim that is based on their publication of information that they learned from Colby. As is noted above, the record establishes that the Therriaults did not communicate that information with malice toward the plaintiff. Indeed, that part of the Therriaults' communication enjoys the benefit of a conditional privilege because the disclosure of that information to Sekera and Cimbollek was of real importance to the school, to them, to Colby and to others who could be affected by the plaintiff's conduct. To this extent, the Therriaults' conduct was protected and lawful.

12

These same circumstances cannot support a factual contention that the publication of this material to Haddix was "so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community. . . ." *Curtis*, 2001 ME 158, ¶ 10, 784 A.2d at 22. It is undisputed that Haddix was a member of the school's board of trustees. The Therriaults chose to send a copy of the letter to him because they were acquainted with him, and because he was a member of the school's board of trustees and thereby had a palpable interest in the issue (regardless of the role he would actually play in the outcome of the personnel decision). *See Wytrwal v. Saco School Board*, 70 F.3d 165, 173 (1st Cir. 1995) (applying Maine law, balancing societal interests in determining whether allegations were sufficient to support a IIED claim). A fact-finder must determine whether in fact the Therriaults abused their conditional privilege by including Haddix in their communication. However, that decision does not support a claim for IIED.

The next question is whether, under these circumstances, the Therriaults may be liable for IIED by also communicating a report that the plaintiff joked with a student about oral sex with his girlfriend. (This is the aspect of the Therriaults' letter that the record indicates was not based on Colby's disclosure to them.) This aspect of the Therriaults' letter must be seen in the context of the other portions of it, all of which were subject to a conditional privilege. It must also be considered against the backdrop of the plaintiff's subsequent acknowledgement that he once did tell members of the soccer team that it was a "great day for a blow job." While the record does not reveal the basis for this portion of the communication, it constitutes a very limited element (one sentence) of the entire letter. It also is similar in nature to that part of the letter that cannot support an IIED claim. The court concludes that its incremental impact on the remainder of the letter, which is not actionable in count 5, is not sufficient to support a conclusion that it embodies conduct that is "extreme," "outrageous," in excess of "all possible bounds of decency," "atrocious" and "utterly intolerable in a civilized community." *Curtis*, 2001 ME 158, ¶ 10, 784 A.2d at 22. *See generally Krennerich v. Inhabitants of the Town of Bristol*, 943 F.Supp. 1345, 1356-57 (D.Me. 1996) (allegations of wrongful discharge from employment and violation of due process rights insufficient to support IIED claim); *Loe v. Town of Thomaston*, 600 A.2d 1090, 1093 (Me. 1991) (disclosure of confidential

13

information concerning circumstances of plaintiff's separation from employment insufficient to support IIED claim); *Staples v. Bangor Hydro-Electric Co.*, 561 A.2d 499, 501 (Me. 1989) (abusive conduct by employer insufficient to support discharged employee's IIED claim).

Finally, the Law Court has held that an IIED claim may not rest on a claim for defamation: if the defendant is not found liable for the defamation, then there can be no IIED recovery based on the same conduct; and if the defendant is liable in defamation, then the plaintiff's damages for any IIED claim are subsumed by the damages caused by the defamation. *Rippett v. Bemis*, 672 A.2d 82, 87-88 (Me. 1996).

For these reasons, the record does not generate a *prima facie* claim for IIED.

## D. Negligent Infliction of Emotional Distress (count 6) [15]

A plaintiff may pursue a valid claim for NIED only in cases of bystander liability, in cases where the relationship between the parties is one that specifically allows such a claim, and in circumstances where the defendant is liable for a separate tort that does not allow recovery for emotional distress. *Curtis*, 2001 ME 158, ¶ 19, 784 A.2d at 26. None of those circumstances exists here, and as a matter of law the plaintiff cannot maintain a claim for NIED.

The entry shall be:

For the foregoing reasons, the motion for summary judgment filed by defendants Bill Therriault and Mary Ellen Therriault is granted in part and denied in part.

With respect to counts 3 (wrongful interference with contractual relations), 5 (IIED) and 6 (NIED), the motion is granted. Summary judgment is entered for defendants Bill Therriault and Mary Ellen Therriault on counts 3, 5 and 6.

The motion is denied as to count 4 (defamation).

Dated: June 11, 2002

_____
Justice, Maine Superior Court

---

[15] Count 6 of the complaint is entitled, "NEGLIGENCE & NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS." In his objection to the motion at bar, the plaintiff treats this cause of action as one for NIED only and not as a generic negligence claim. The court limits and assesses the count accordingly.

Date Filed __11/17/2000__ ___PENOBSCOT___ Docket No. ___CV-2000-218___
County

Action ___CONTRACT___

ASSIGNED TO JUSTICE FRANCIS C MARSANO
**RE-ASSIGNED TO JUSTICE ANDREW M. MEAD**
**REASSIGNED TO JUSTICE JEFFREY L. HJELM**

|  |  |
|---|---|
| LOUIS JANICKI | JOHN BAPST MEMORIAL HIGH SCHOOL, *JOSEPH SEKARA, *JOHN MCDEVITT, *WILLIAM HOGAN, *JAMES HADDIX, BILL THERRIAULT & MARYELLEN THERRIAULT |

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| BILLINGS & SILVERSTEIN<br>P O BOX 1445 - 47 Main Street<br>BANGOR ME 04402-1445<br>BY: Jeffrey M. Silverstein, Esq. | Law Office of Carl F. Rella, P.A.<br>PO Box 2700<br>Bangor, Maine 04402-2700<br>BY: Carl F. Rella, Esq.<br>FOR: Mary Ellen Theriault & Bill Theriault |
|  | Paul W. Chaiken, Esq.<br>P O Box 1401 - 84 Harlow St.<br>Bangor, Maine 04402-1401<br>For: John Bapst Memorial High School, Joseph Sekera, John McDevitt, William Hogan, and James Haddix |

| Date of Entry | |
|---|---|
| 11/17/00 | Complaint filed - Exhibits 1 & 2 attached. |
| 11/17/00 | Case File Notice Postcard forwarded to Plaintiff's counsel. |
| 11/29/00 | Officer's Return of Service as to Bill Therriault filed (s.d. 11/21/00) |
| 11/29/00 | Officer's Return of Service as to Maryellen Therriault filed. (s.d. 11/21/00) |
| 12/6/2000 | Defendants' Answer to the Plaintiff's Complaint Filed. |
| 12/6/2000 | Notification of Discovery Service Filed by Defendants; Defendants' Interrogatories Propounded to Plaintiff. |
| 12/7/00 | Acknowledgment of Receipt of Summons and Complaint as to Defendant John Bapst Memorial High School filed. (s.d. 12/6/00) by Paul W. Chaiken, Esq. |
| 12/7/00 | Acknowledgment of Receipt of Summons and Complaint as to Defendant Joseph Sekara filed.(s.d. 12/6/00) by Paul W. Chaiken, Esq. |
| 12/7/00 | Acknowledgment of Receipt of Summons and Complaint as to Defendant John McDevitt filed. (s.d. 12/6/00) by Paul W. Chaiken, Esq. |
| 12/7/00 | Acknowledgment of Receipt of Summons and Complaint as to Defendant William Hogan filed. (s.d. 12/6/00) by Paul W. Chaiken, Esq. |
| 12/7/00 | Acknowledgment of Receipt of Summons and Complaint as to Defendant James Haddix filed. (s.d. 12/6/00) by Paul W. Chaiken, Esq. |
| 12/22/00 | By letter, Atty. Paul Chaiken indicates he will be representing the defendants John Bapst Memorial High School, Joseph Sekera, John McDevitt, William Hogan, and James Haddix. |